**Exio REYES, Plaintiff,**

v.

**Patricia R. HARRIS, Secretary, Department of Health, Education and Welfare, Defendant.**

**No. 79 Civ. 908.**

United States District Court, S. D. New York.

Feb. 1, 1980.

Alan Kleinman, Bronx Legal Services, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, New York City, for defendant; Edward G. Williams, Asst. U. S. Atty., New York City, of counsel.

ROBERT J. WARD, District Judge.

This is an action brought pursuant to sections 205(g), 221(d) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g), 421(d) & 1383(c)(3), for judicial review of a final decision of the Secretary of Health, Education, and Welfare ("the Secretary") denying plaintiff's applications for disability insurance benefits and for

supplemental security income ("SSI"). The Secretary has moved under Rule 12(c), Fed. R.Civ.P., for judgment on the pleadings affirming the administrative determinations. Plaintiff's cross-motion, also for judgment on the pleadings, seeks a remand of this matter to the Secretary for further administrative proceedings. For the reasons set forth below, both motions are denied.

On April 27, 1977, plaintiff filed an application for disability insurance benefits and an application for SSI disability benefits. In both applications plaintiff alleged that he had been unable to work since March 1973. However, the New York State Disability Determinations Bureau found that plaintiff's claimed impairments did not significantly limit his capacity to perform work-related functions, and the Secretary advised plaintiff that he was not entitled to disability insurance or SSI disability benefits. On July 20, 1977, plaintiff requested reconsideration, but the Secretary reaffirmed the earlier decisions.

Plaintiff subsequently brought his claim to an administrative law judge ("ALJ") for a de novo determination of his eligibility for disability benefits. On April 5, 1978, a hearing was conducted by the ALJ, at which plaintiff appeared and testified. Plaintiff appeared without counsel and without any other person assisting him. An interpreter was present to assist the ALJ should plaintiff have wished to speak in Spanish, his native tongue, but apparently plaintiff decided to present his case in English and the interpreter's services were not used. A vocational expert also was present at the hearing and testified in response to questions asked by the ALJ.

In a June 8, 1978 decision, the ALJ determined that plaintiff was not under a disability severe enough to entitle him to disability insurance or SSI disability benefits. On August 28, 1978, the Secretary's Social Security Appeals Council affirmed the ALJ's decision, and this action followed.

The record before the ALJ included plaintiff's applications for disability insurance and SSI benefits, medical reports from four physicians and one psychotherapist, a pathology report and an X-ray report. Three of the five medical reports, and the pathology and X-ray reports, were obtained at the request of the Secretary acting through the New York State Bureau of Disability Determinations. Plaintiff submitted two additional medical reports from his personal physician, Dr. S. R. Patelo, and from his psychotherapist, Dr. Demaris Jacob.

The reports plaintiff submitted were brief. Dr. Patelo merely listed, by number, plaintiff's eight "problems": (1) hay fever, (2) bronchial asthma with frequent severe attacks, (3) allergies to "many things," (4) hypertension, (5) mild diabetes, (6) severe anxiety or (7) depression, and (8) mild osteoarthritis. Dr. Jacob provided plaintiff with a one-page letter in which he stated that plaintiff had been receiving chemotherapy treatment and attending family therapy sessions for "his nervous condition which includes severe anxiety and depression." Neither Dr. Patelo nor Dr. Jacob offered an unequivocal opinion on the ultimate question of plaintiff's ability to engage in substantial gainful activity.[1]

---

1. However, in his August 18, 1977, letter Dr. Jacob did have this to say:

It may appear, in conversation with Mr. Reyes, that his mental condition is not sufficiently disturbed so as to warrant a decision to award disability based on that alone. There is a complicating factor in this case, however, and that is that Mr. Reyes [sic] wife Maria, whom he is attempting to care for at home is a very disturbed woman, diagnosed Paranoid Schizophrenic by our psychiatrist. Maria so far refuses any treatment, including medication, and Mr. Reyes has not been able yet to hospitalize her.

Living in such a demanding and chaotic situation as he is, greatly exacerbates Mr. Reyes' mental condition. For reasons based on Mrs. Reyes [sic] delusional system, it would appreciably relieve the home situation if Mr. Reyes were awarded disability.

The ALJ interpreted this letter to mean that Dr. Jacob considered plaintiff not to be disabled. Plaintiff contends that this construction was erroneous and that if construed correctly the letter evidences a conclusion by Dr. Jacob that plaintiff does, in fact, suffer from a psychological disability. As discussed further infra, the Court's decision here affords plaintiff the opportunity to clarify Dr. Jacob's evaluation.

In his disability insurance and SSI applications plaintiff alleged disability based on diabetes, asthma, high blood pressure, arthritis, a trick knee, pain in his hips and in his kidneys, and nerves. Accordingly, the Secretary had plaintiff examined by Dr. Benjamin Yentel and Dr. James Grossman, specialists in internal medicine and cardiovascular diseases, and Dr. Sidney Elpern, a specialist in neurology and psychiatry. Although none of these physicians offered an opinion on the issue of plaintiff's disability, each provided the Secretary with a detailed report on clinical findings and medical determinations.

Dr. Yentel, who examined plaintiff on June 10, 1977, measured plaintiff's blood pressure at 162/95, found his ears, eyes, nose and throat to be within normal limits, and observed plaintiff's lungs to be clear to percussion and auscultation with no rales, wheezing or rhonchi present. Plaintiff's spine and joints were found to have a normal range of motion for walking, standing, sitting and bending, except that Dr. Yentel noticed that a laceration over plaintiff's left middle finger caused a slight (5 to 10%) impairment of the finger's motion with a resulting impairment of the ability to grasp. Reviewing plaintiff's X–ray report, Dr. Yentel observed that while there were some minimal osteoarthritic changes around plaintiff's left knee joint, his left hip was within normal limits. Dr. Yentel found that plaintiff's arthritis could not be clinically determined and saw no signs of atrophy. Plaintiff's endocrine system was normal, and Dr. Yentel observed no evidence of edema, trophic changes or gangrene in plaintiff's right or left extremities. Evaluating plaintiff's cardiovascular system, Dr. Yentel found nothing to suggest angina, congestive heart failure, dyspnea or retinal, cerebral or renal involvement. Dr. Yentel concluded that (1) while plaintiff had a history of diabetes mellitus, and had been treated since 1963, there was no systemic involvement; (2) although plaintiff had a history of bronchial asthma, there was no evidence of asthmatic difficulties during the examination; (3) while plaintiff also had a history of hypertension, and had been under treatment for this since 1973, there was no evidence of hypertension during the examination; and (4) though he diagnosed low back syndrome and observed neuralgic pain in plaintiff's joints, plaintiff's range of motion remained normal.

In a letter dated September 29, 1977, Dr. Grossman reported on his examination of plaintiff. Dr. Grossman measured plaintiff's blood pressure at 190/120 and concluded that plaintiff suffered from moderate systemic hypertension. Noting plaintiff's history of asthma, Dr. Grossman observed plaintiff to be in mild respiratory distress with audible wheezing and diagnosed moderate bronchial asthma. Dr. Grossman saw no evidence of retinal, cerebral or renal involvement, and a pulmonary test revealed minimally reduced vital capacity with a fair response after bronchodilators were applied. A neurological examination of plaintiff revealed nothing unusual, and Dr. Grossman read plaintiff's electrocardiogram as normal and saw no evidence of congestive heart failure. Plaintiff's chest pain did not appear to be anginal in nature. Aware of plaintiff's history of diabetes and having measured plaintiff's blood sugar as slightly elevated, Dr. Grossman diagnosed mild diabetes mellitus which he determined could be treated by diet alone.

Dr. Sidney Elpern examined plaintiff on August 18, 1977. Plaintiff complained to Dr. Elpern of dizziness, allergies, headaches and emotional and nervous disorders. He informed the physician that his dizzy spells often resulted in a loss of consciousness and that he was subject to spells of crying. Dr. Elpern noted that plaintiff's complaints were "expressed with great emotion and tearfulness" and observed that plaintiff was "obviously highly neurotic and probably depressed." But, although a specialist in psychiatry, Dr. Elpern did not report on the results of any evaluation of plaintiff's psychological difficulties; apparently no such evaluation was undertaken.

What Dr. Elpern's examination did reveal was that plaintiff displayed no sign of organic brain disease and had normal cerebral electrical activity. The electroencephalo-

gram analyzed by Dr. Elpern revealed a well-organized pattern with no abnormal potential. Dr. Elpern observed no muscle atrophy, equal and active deep tendon reflexes, and normal plantar reflexes. However, as a result of plaintiff's poor cooperation Dr. Elpern was unable to perform a reliable sensory examination. In addition, Dr. Elpern could not determine the nature of plaintiff's blackouts, although he thought they might be caused by hyperventilation syndrome.

Plaintiff's administrative hearing lasted approximately seventy minutes. At the outset the ALJ noted that because plaintiff was appearing without representation it was his duty as presiding officer to assist plaintiff at the hearing.[2] After admitting the exhibits in plaintiff's claim file into evidence, the ALJ proceeded to question the claimant. The interrogation does not appear to have been overly fruitful, however, for, while the ALJ learned about plaintiff's daily activities, means of support (absent disability benefits), and past employment, the ALJ uncovered little about the basis of plaintiff's claim of inability to work. Though plaintiff was asked about each of his alleged ailments, the ALJ's inquiries did not elicit testimony from plaintiff on the reasons why plaintiff believed these medical and psychological difficulties kept him from working.

The ALJ carefully questioned plaintiff on the physicians he had seen and on the clinics and hospitals he had visited. Plaintiff's responses revealed that there were no reports in the administrative record from the following: Dr. Flores, a physician whom plaintiff had seen on at least one occasion; the Veterans Administration Hospital, where plaintiff had been examined in July 1977; and the Martin Luther King and Matalorca Clinics, each of which plaintiff

had visited a number of times. The ALJ, however, did not inform plaintiff that the Social Security Administration would attempt to obtain reports from Dr. Flores, the hospital and the clinics, nor did the ALJ suggest that plaintiff himself obtain these reports.[3]

A vocational expert, William Mooney, testified at the hearing. The ALJ asked the expert to assume that plaintiff had normal ability to walk, stand, lift, sit, bend, grasp and manipulate his hands, that plaintiff could use public transportation, and that plaintiff suffered from moderate asthma, moderate hypertension and mild diabetes. Based on these assumptions, and considering plaintiff's age, education and work experience, Mr. Mooney testified that plaintiff could return to his former work as taxicab driver as well as engage in other light work activities. However, in evaluating plaintiff's capability to resume driving a taxicab, the vocational expert apparently did not take into consideration plaintiff's alleged dizzy spells and nervous disorders, nor did he consider whether plaintiff would be able to renew his taxi driver's license, which expired in 1969.

 To be entitled to disability benefits, plaintiff must establish the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See *Franklin v. Secretary of Health, Education and Welfare,* 393 F.2d 640, 642 (2d Cir. 1968). It is for the Secretary to determine whether a claimant's impairments prevent him from engaging in substantial gainful activity. The Secretary's findings, if sup-

2. However, the ALJ did not elicit a specific acknowledgment from plaintiff that plaintiff was intentionally forgoing representation. The ALJ said: "Now, you were advised in a Notice of Hearing of your right to be represented by an attorney or other person of your choice. Since you are appearing without such representation, it will be my duty to safeguard your rights and to assist you at the hearing."

3. At an earlier stage of the hearing the ALJ had asked plaintiff if he had any documents with him or at home that he wanted the ALJ to consider. Plaintiff said he did not, although he did say: "Your Honor, I think you got the power to find my papers on the doctor who's treating me now."

ported by substantial evidence, are to be treated as conclusive by a reviewing court. 42 U.S.C. § 405(g). In this context, substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). The substantial evidence rule also applies to inferences and conclusions drawn from findings of fact. *Rodriguez v. Califano*, 431 F.Supp. 421, 423 (S.D.N.Y.1977). Accordingly, this Court cannot reweigh the evidence adduced at the administrative level or substitute its judgment for that of the Secretary. *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973).

■ The administrative record before the Court contains substantial evidence on which the Secretary could base a finding that plaintiff was not disabled. Nothing in the reports (and accompanying pathology and X-ray analyses) from Drs. Yentel, Grossman and Elpern would compel the Secretary to conclude that plaintiff could not engage in any substantial gainful activity for the required twelve-month period. The reports from plaintiff's physician Dr. Patelo and from his psychotherapist Dr. Jacobs, moreover, do not add such support to plaintiff's disability claim as to negate the substantial evidence on which the Secretary based her decision that plaintiff could undertake substantial gainful activity.

Plaintiff's diabetes was diagnosed as mild and his asthma considered moderate. Nothing in the record suggests that either condition would impair plaintiff's ability to engage in some gainful activity.[4] Similarly, the record contains no evidence that either plaintiff's mild arthritic condition or his moderate hypertension definitely would keep him from working. Aside from the minimal osteoarthritic changes about plaintiff's left knee joint observed by Dr. Yentel, plaintiff's range of motion was found to be normal in all joints, thus providing a basis on which the Secretary could support a finding that plaintiff could move about enough to enable him to work.

In his disability applications and in testimony before the ALJ at the hearing plaintiff alleged disabling pain. There is no question that "subjective *pain* may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (emphasis in original). But it is within the ALJ's "discretion to evaluate the credibility of a claimant" and to determine "the true extent of the pain alleged." *Id.*, at 27. The administrative record here does not contain such overwhelming evidence of pain that the Court is compelled to conclude the Secretary lacked substantial evidence to support her finding.[5] Nor is there anything in the record to suggest the ALJ refused to consider any claim of subjective pain.

■ The existence of plaintiff's allegedly disabling nervous condition is supported by the reports of Drs. Elpern, Jacob and Patelo. However, none of those reports conclusively establishes that plaintiff's psychological troubles prevent him from working. Dr. Jacob's letter is at best ambiguous.[6]

---

4. Plaintiff correctly contends that it was erroneous for the ALJ to reconcile the difference between the observations of Drs. Yentel and Grossman regarding plaintiff's asthma by concluding that the respiratory problems plaintiff exhibited at the time he saw Dr. Grossman were the result of the September hay fever season. The ALJ's resort to an improper lay medical opinion, however, was harmless error. For even though he observed plaintiff to be in mild respiratory distress, Dr. Grossman diagnosed only moderate bronchial asthma, a diag-

nosis which itself would not require a finding of disability.

5. There is evidence in the record to support a conclusion that plaintiff's pain is not disabling. Plaintiff testified that during the course of an average day he walks through a nearby park, helps with household chores at home, and goes grocery shopping with his son. He also told the ALJ that taking Indocin relieves his pain.

6. *See* note 1 *supra*.

Dr. Patelo's report merely lists as one of plaintiff's "problems" severe anxiety or depression. And the report from Dr. Elpern, though concluding that plaintiff is "highly neurotic and probably depressed," offers no clinical evidence to support this conclusion and does not suggest plaintiff has a sufficiently severe functional loss to prevent his engaging in substantial gainful activity. Unsupported medical opinion properly may be discounted as unsubstantial. *Laffoon v. Califano,* 558 F.2d 253, 256 (5th Cir. 1977). Moreover, symptoms of depression and anxiety, absent evidence of functional loss, do not establish disability. *Blackwood v. Mathews,* [Jan. 1976—Jan. 1977 Transfer Binder] Unempl. Ins. Rep. (CCH) ¶ 14,653 (D.S.C.1976), *aff'd mem.,* 551 F.2d 304 (4th Cir. 1977).

■ The applicant for disability benefits has the ultimate burden of persuasion. *Franklin v. Secretary of Health, Education and Welfare, supra,* 393 F.2d at 642. Plaintiff here has failed to demonstrate that his claimed disabling condition keeps him from engaging in substantial gainful activity. Even viewing the evidence in the record in a light most favorable to plaintiff, *see Selewich v. Finch,* 312 F.Supp. 191, 195 (D.Mass. 1969), the Court finds the Secretary's decision is supported by substantial evidence. Therefore, absent a showing of "good cause" for remand under 42 U.S.C. § 405(g), the Secretary's decision must be affirmed.

■ Plaintiff was not represented by counsel at the hearing before the ALJ. Maintaining that his lack of counsel resulted in a deficient presentation of his case, plaintiff contends that his disability claim should be remanded to the Secretary for further administrative proceedings. Lack of counsel alone, however, does not provide sufficient cause for remand. Remand is only available to a disability claimant who demonstrates that his lack of representation resulted in "clear prejudice or unfairness." *Cross v. Finch,* 427 F.2d 406, 409 (5th Cir. 1970).

The Court entertains little doubt that plaintiff would have been able to present a stronger case had he been represented at the hearing. Without some assistance few disability claimants are capable of adequately preparing their cases for presentation at an administrative hearing. Unquestionably those claimants fortunate to have the benefit of help in preparing and presenting their cases stand a much better chance of convincing the Social Security Administration of their inability to pursue gainful employment. The Court's role here, however, is limited to ascertaining that plaintiff had a fair opportunity to present his claim. The question is not whether plaintiff would have done better had he obtained counsel, but rather whether there is good reason to believe the Secretary's determination may have been different had plaintiff been represented.

Hearings on disability claims are not adversary proceedings. *Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir. 1975). The ALJ is required to "inquire fully into the matters at issue." 20 C.F.R. § 404.927 (1979). And where the claimant is not represented by counsel the ALJ has the special duty "scrupulously and conscientiously" to probe into all relevant facts. *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir. 1972), *quoting Hennig v. Gardner,* 276 F.Supp. 622, 624 (N.D.Tex. 1967). Plaintiff argues that in this instance the ALJ failed to perform this duty and did not, as the Secretary contends, safeguard plaintiff's rights and assist him at the hearing.[7]

■ The Court is not persuaded that plaintiff was so clearly prejudiced by his lack of representation, and by the failure of the ALJ to assist plaintiff in developing the evidence, that based on this record the Secretary's decision was arrived at unfairly. Plaintiff argues that the ALJ should have obtained more detailed reports from Drs. Patelo and Jacobs and sought reports from the Veterans Administration Hospital, Martin Luther King Clinic, and Matalorca Clinic. Although plaintiff appears to contend that such reports would have been before

---

7. *See note 2 supra.*

the ALJ had he been represented by counsel, plaintiff has not even given the Court a hint as to what these reports would contain. In addition, plaintiff maintains that the ALJ failed to elicit testimony from him that would be favorable to his claim. Presumably any representation plaintiff might have secured would have made certain the ALJ heard all such testimony. Again, however, plaintiff has given the Court no idea what evidence this testimony would adduce.

■ Plaintiff has the burden of demonstrating that his lack of representation so prejudiced his disability claim that there is reason to believe the Secretary's determination may have been different if plaintiff had counsel. *Ayala v. Secretary of Health, Education and Welfare*, 372 F.Supp. 1216, 1219 (D.P.R.1973). This situation is essentially the same as the instance in which an unsuccessful disability claimant contends that remand is appropriate because the claimant has new evidence to present to the Secretary. Reviewing courts have consistently required that where "remand is sought for the purposes of introducing new evidence, a plaintiff has the burden of demonstrating the existence of such new evidence." *Pugh v. Secretary of Health, Education and Welfare*, 448 F.Supp. 37, 40 (D.Kan.1978). Not only must the new evidence be presented to the court, but the court must also be persuaded that if the "evidence [had been] made part of the record the decision of the Secretary might have been different." *Hutchinson v. Weinberger*, 399 F.Supp. 426, 428 (E.D.Mich. 1975).

The Court recognizes that a decision here affirming the Secretary could erect a *res judicata* bar to a future claim by plaintiff for disability insurance benefits based on his record of Social Security contributions. 20 C.F.R. § 404.937(a) (1979). *See Thompson v. Richardson*, 452 F.2d 911, 913 (2d Cir. 1971). It would indeed be unfair to allow the Secretary's decision to stand if in fact plaintiff's inability to establish his eligibility for disability benefits can be attributed—even in part—to the failure of the

Secretary's hearing officer to develop the record as well as he could have. Accordingly, plaintiff may present to the Court the evidence he would adduce on remand.[8] Should the Court be persuaded that the evidence plaintiff presents is such that if considered by the Secretary it may result in a decision to award disability benefits, the Court will order a new administrative hearing. Otherwise, the Secretary's decision will be affirmed.

Accordingly, the Secretary's motion for judgment on the pleadings and plaintiff's cross-motion for judgment on the pleadings are denied. Within sixty days of the date of this decision plaintiff shall submit to the Court the evidence he would propose to present to the Secretary on remand, and either or both parties may move for summary judgment. If plaintiff fails to submit this evidence within the time period provided, the Secretary may settle an order on notice granting judgment on the pleadings.

It is so ordered.

---

**8.** Plaintiff may submit medical and hospital reports or medical testimony in affidavit form.

He may also submit his own affidavit outlining the testimony he would give on remand.