**Alido VEGA, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. 81 Civ. 3511. (KTD).**

United States District Court, S.D. New York.

Oct. 4, 1982.

---

John D. Gorman, New York City, for plaintiff.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for defendant; Steven E. Obus, Asst. U.S. Atty., Annette H. Blum, Regional Atty., Region II, Michael Noorigian, Asst. Regional Atty., Dept. of Health and Human Services, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Alido Vega brings this action under the Social Security Act, 42 U.S.C. §§ 405(g) (1976 & Supp. IV 1980) and 1383(c)(3) (1976), to review a final determination of the Secretary of the Department of Health and Human Services ("the Secretary") denying plaintiff's application for reinstitution of disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381–1383(c)(3). Both parties now move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

Mr. Vega is 43 years old and lives with his wife and five children. He has a seventh grade education, was raised in Puerto Rico, and can read and write only Spanish. He has worked as a machine operator, truck packer, and unloader for various companies since 1965. Mr. Vega's last day of employment was July 28, 1978, when the increasing pain in his arms, hands, and left leg forced the plaintiff to cease working. During a three-day stay in Jacobi Hospital in the Bronx in December of 1978, Mr. Vega was diagnosed as having myotonic dystrophy, a hereditary disease characterized by tonic muscle spasms, muscular wasting of a characteristic pattern, cataracts, testicular atrophy and frontal baldness. *Harrison's Principles of Internal Medicine* 1994 (G.W. Thorn, et al. ed. 8th ed. 1977). Mr. Vega's brother and father also suffer from the disease.

Mr. Vega filed applications for disability insurance benefits and supplemental security income benefits on August 29, 1978. Both applications were denied by the Secretary in a written determination dated November 2, 1978. A second request by Mr. Vega was denied by the Secretary on December 12, 1978, again finding that Mr. Vega did not suffer from a disability. On January 12, 1979, Mr. Vega requested a hearing on the denial of benefits. The hearing was held before Administrative

Law Judge ("ALJ") Francis J. Eyerman on March 28, 1979. Mr. Vega was not represented by counsel at this hearing. In a decision dated April 13, 1979, the ALJ found that the claimant was suffering from a disability and met the requirements for both disability insurance benefits and supplemental security income benefits. After observing Mr. Vega, the ALJ found the claimant's ". . . complaints of pain in the legs and the hands credible," and based upon the testimony of a vocational expert, concluded that Mr. Vega would not be able to perform any type of substantial gainful activity.

Mr. Vega received both disability insurance benefits and supplemental security income benefits until August 14, 1980 when he was informed by the Social Security Administration that they no longer considered him disabled or incapable of performing substantial gainful work. This decision was based on May 2, 1980 and May 12, 1980 medical reports furnished by Dr. G. Rahaih, a doctor apparently hired by the New York State Department of Social Services, (Trial Transcript at 134–39), which stated that the claimant suffered from mild myotonic dystrophy which caused him "great difficulty with manipulative activities involving the hands," although it did not cause him any functional limitation. Dr. Rahaih's diagnosis contradicts that of the claimant's doctor, Dr. A. Neugut, who had determined on February 13, 1980, that Mr. Vega was incapable of performing "most forms of employment."

On August 18, 1980, four days after the adverse determination by the Social Security Administration, Mr. Vega again requested a hearing before an ALJ. The hearing was held on October 30, 1980, by ALJ Raymond E. Dockery, Jr. Mr. Vega again appeared unrepresented by counsel. The ALJ's decision, dated December 23, 1980, noted medical reports issued by Dr. Neugut covering the period from April 6, 1979 through May 14, 1980, and determined from these reports that over that time period the claimant's disabled condition had not changed. The ALJ, however, chose to emphasize the medical reports submitted by

Dr. Rahaih, from which it was determined that "the claimant had the residual functional capacity to engage in a wide range of sedentary work activities." Mr. Vega's disability, therefore, was determined to have "ceased" in May, 1980, terminating his right to receive both disability insurance benefits and supplemental security income benefits.

The Secretary's determination must establish a claimant's ability or inability to engage in substantial, gainful activity. If the determination is supported by substantial evidence, the Secretary's findings are to be treated as conclusive by a reviewing court. 42 U.S.C. § 405(g). In reviewing the ALJ's decision, I am mindful of the ALJ's "discretion to evaluate the credibility of a claimant" in determining "the true extent of the pain alleged." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

It is the role of this court, however, not only to determine if the denial of benefits was supported by substantial evidence but also to ascertain whether the claimant was provided with a fair opportunity to present his claim. It appears that Mr. Vega was not given such an opportunity in the present case. A *pro se* claimant is not entitled to automatic remand from an unfavorable ruling. *Reyes v. Harris,* 486 F.Supp. 1063, 1069 (S.D.N.Y.1980). However, lack of counsel obligates the ALJ to "scrupulously and conscientiously" probe into all relevant facts, and safeguard the plaintiff's rights by assisting him at the hearing. *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir.1972), *quoting Hennig v. Gardner,* 276 F.Supp. 622, 624 (N.D.Tex.1967).

The record indicates that ALJ Dockery did inform the claimant of his right to counsel. It appears from the transcript of the hearing, however, that Mr. Vega was not able to fully appreciate the need to be represented by counsel. This may be due either to Vega's lack of facility with the English language, or his favorable determination at his previous hearing. The presence of a translator did not seem to ease ALJ Dockery's ability to communicate the

significance of appearing without counsel to the claimant. Hearing transcript at 2–4.

My conclusion that Mr. Vega did not understand his right to be represented by counsel and that the ALJ did not "scrupulously and conscientiously" protect Mr. Vega's rights is amply supported by the record. Mr. Vega responded "It's all right, to another day" to the ALJ's offer to postpone the trial so that Mr. Vega could obtain counsel. He later affirmatively answered the question of whether he wanted to "go ahead" with the hearing, but then seemed not to understand the same question a moment later. In addition, ALJ Dockery introduced the subject of the claimant's lack of counsel by incorrectly stating that if Mr. Vega were represented, it would be at his own expense. The ALJ did not alert the claimant to the availability of representation through the Legal Services and Legal Aid programs in the Bronx. *See Rials v. Califano,* 520 F.Supp. 786, 788 (D.C.Tex. 1981). Moreover, the claimant does not appear to have been aware of the notice of hearing that had been sent to him containing information regarding the right to representation. Even if he had been aware of the notice, it is printed only in English and his deficiency in English renders it immaterial.

The failure of the ALJ to protect Vega's rights is further demonstrated by his reliance on the medical reports furnished by Dr. Rahaih introduced for the first time at the October 30, 1980 hearing. The claimant does not appear to have understood either the potential significance of these reports, or more importantly, his right to object to their admission as evidence. When asked if he objected to their consideration by the ALJ, the claimant responded, "Yes. I accept because it's part of the record." Hearing Transcript at 20. ALJ Dockery did not attempt to assist the claimant in either examining this new evidence or in procuring further evidence on his behalf. For example, Mr. Vega could have returned to Dr. Neugut for further consultation or a new doctor could have been chosen by the claimant to formulate a second opinion on Dr. Rahaih's diagnosis. In this vein, the

Second Circuit has noted that even if an ALJ has determined that the medical evidence of the Secretary is more persuasive than that of a *pro se* litigant, "a remand is still appropriate due to the ALJ's failure to assist this *pro se* litigant in securing all of the relevant medical testimony." *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir. 1980), *citing Eiden v. Secretary of HEW,* 616 F.2d 63 (2d Cir. 1980).

Mr. Vega's *pro se* status and inability to represent himself adequately in English distinguishes Mr. Vega's case, in which remand is necessary to ensure full protection of his rights, from the case of a *pro se* claimant who is capable of presenting his evidence and argument in English. *Cf. Reyes v. Harris,* 486 F.Supp. 1063 (S.D.N.Y. 1980) (remand unnecessary when Spanish speaking *pro se* claimant is capable of adequately representing himself in English).

The circumstances of the claimant's second hearing lead me to conclude that Mr. Vega was not provided with a fair and adequate hearing before the Secretary. Since the claimant is now represented by counsel, it is likely that the shortcomings discussed above can be corrected. Accordingly, this case is remanded to the Secretary for proceedings consistent with this decision.

SO ORDERED.