**Charles R. GROSS, Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Appellee.**

No. 84–1807.

United States Court of Appeals, Fourth Circuit.

Argued April 1, 1985.

Decided Feb. 27, 1986.

Rehearing and Rehearing En Banc May 13, 1986.

---

James A. McLaughlin, Charleston, W.Va., (Susan K. McLaughlin, Fairmont, W.Va., Barkan & Neff Co., L.P.A., Columbus, Ohio, on brief), for appellant.

Deborah Fitzgerald (Beverly Dennis, III, Reg. Atty., David L. Hyman, Asst. Reg. Atty., Philadelphia, Pa., William A. Kolibash, U.S. Atty., Betsy C. Steinfeld, Asst. U.S. Atty., Wheeling, W.Va., on brief), for appellee.

Before HALL, WILKINSON and SNEEDEN, Circuit Judges.

PER CURIAM:

Charles Gross appeals from an order of the district court affirming the decision of the Secretary of Health and Human Services to deny disability, disability insurance, and supplemental security income benefits. The administrative law judge (ALJ) had found that Gross was disabled; the Appeals Council found that he was not disabled. Because the clear precedent of this circuit requires that the court defer to the Appeals Council, rather than the ALJ, and because the findings of the Appeals Council are supported by substantial evidence, we affirm the decision of the district court.

The ALJ initially decided that Gross was entitled to disability benefits. The Appeals Council reviewed the decision of the ALJ and concluded that it was not supported by substantial evidence. The Appeals Council then remanded the case to the ALJ, so that the ALJ could obtain a psychiatric examination of appellant with psychological testing, and conduct a hearing.

After the examinations and hearing, the ALJ again concluded that Gross was disabled. The Appeals Council again reviewed the decision of the ALJ on its own motion. After considering the entire record, the Appeals Council decided that Gross' impairments were not severe, and that he was therefore not disabled.

Gross then appealed to the district court, which determined that the finding of the Appeals Council was supported by substantial evidence, and accordingly granted summary judgment to the Secretary.

■ This appeal presents a recurrent question: when the ALJ and the Appeals Council disagree on the award of disability benefits, to whom do the courts owe deference? The answer is well-established. Two recent rulings make it clear that the courts owe deference to the findings of the Appeals Council. *Parris v. Heckler*, 733 F.2d 324 (4th Cir.1984); *Kellough v. Heckler*, 785 F.2d 1147 (4th Cir.1986).

In *Parris*, the court said, "The statutorily-mandated deference runs in favor of the Secretary and the Appeals Council, not the ALJ and the Appeals Council may reach conclusions differing from those of the ALJ, which we must uphold if supported by substantial evidence." 733 F.2d at 326. *Kellough* reaffirmed *Parris*, and thoughtfully set forth the reasons why deference is due the Appeals Council. At 785–1151 n. 5. The Council is entitled to this deference whether its review of the ALJ decision was *de novo* or on the record. The matter of deference has been much discussed; we decline to revisit it, and we review the judgment of the district court on the authority of *Parris* and *Kellough*.

We have examined the ruling of the Appeals Council under the *Parris* standard, and have found that substantial evidence supports the ruling of the Appeals Council. The regulations state that the Appeals Council will review a case if the "action, findings or conclusions of the administrative law judge are not supported by substantial evidence." 20 C.F.R. § 404.970(a)(3). The Appeals Council explicitly concluded that the decision of the ALJ to award benefits to Gross was not supported by substantial evidence of a severe impairment. Since there is no question that the Appeals Council employed the correct standard of review, the question of whether the decision of the ALJ was supported by substantial evidence is not before us. The only issue is whether the decision of the Appeals Council is supported by substantial evidence.

In order to qualify for disability benefits, an applicant must have an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). For example, work activities might include walking, standing, sitting, lifting, pushing, pulling, and reaching; as well as capacities for seeing, hearing and speaking; and understanding, carrying out, and remembering simple instructions. 20 C.F.R. § 416.921(b).

The claimant has the burden of proving his disability to the satisfaction of the Secretary. The claimant must demonstrate that he has a medically determinable physical or mental impairment, and that the impairment renders him unable to engage in substantial gainful employment. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972) (citations omitted).

■ The Appeals Council methodically considered the entire record, including the notes and reports of numerous doctors, and Gross' own testimony. We believe that there is substantial evidence to support the Appeals Council's finding that Gross' impairments were not severe, that he was capable of gainful employment, and that he was therefore not entitled to disability benefits.

■ During his hearing before the ALJ, Gross said that he suffered from arthritis, poor vision, ulcers, blackout spells, nerves, and a heart condition. There was ample reason to conclude that Gross' arthritis, poor vision and ulcers would all respond to basic medical attention, and were therefore not disabling. Glasses would correct Gross' vision, which was tested at 20/25 in the right eye, and 20/50 in the left. Dr. Jo Ledwell reported that plaintiff could perform tasks requiring fine visual discrimination. His arthritis responded to conservative treatment, and his stomach pains were

relieved by antacids. If a symptom can be reasonably controlled by medication or treatment, it is not disabling. *Purdham v. Celebrezze*, 349 F.2d 828, 830 (4th Cir. 1965); 20 C.F.R. § 404.1530. Therefore, the Appeals Council did not err in eliminating visual problems, arthritis and ulcers as evidence of disability.

Gross also complained of chest pain, which Dr. Neil Johnson said was atypical of angina pectoris. In order to qualify for disability benefits, one must have an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), (5)(A). *See also* 42 U.S.C. § 1382c(a)(3)(A). As the Appeals Council noted, there were no specific clinical findings, and no neurological, sensory, or reflex abnormalities which would explain Gross' chest pain, blackouts, or anxiety. *Cf. Foster v. Heckler*, 780 F.2d 1125 (4th Cir.1986).

It is certainly possible that Gross experienced some pain. However, while the Appeals Council may not utterly disregard complaints of pain, pain is not disabling *per se*. "The Secretary may not ignore entirely evidence of pain which the ALJ has found credible, *Combs v. Weinberger*, 501 F.2d 1361, 1363 (4th Cir.1974); nonetheless, subjective allegations alone cannot be determinative where there is at least some evidence, as here, that the Appeals Council gave attention to the matter. Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Parris*, 733 F.2d at 327.

In its decision, the Appeals Council discussed Gross' complaints of pain. The Council could well have decided that Gross' pain, in the absence of objective medical evidence, was not disabling. It noted Dr. Ledwell's conclusion that plaintiff demonstrated an "over concern or hypersensitivity to minor dysfunction and numerous complaints without adequate physical pathology."

Several of the doctors who examined Gross suggested that he might have a psychological disorder, specifically, conversion disorder, hypochondriasis, or alcoholism. However, a psychological disorder is not necessarily disabling. There must be a showing of related functional loss. *Sitar v. Schweiker*, 671 F.2d 19, 20–21 (1st Cir. 1982). As to alcoholism, Gross told one psychologist he had not had a drink in the past six months and another that he did not drink at home because his mother would not permit it. 20 C.F.R. §§ 404.1525(e) and 416.925(e) state that addiction to alcohol is not by itself a basis for determining whether one is disabled, and the Appeals Council had substantial evidence to support its conclusion that involuntary drinking habits did not "preclude claimant from sustained work."

Thus, none of Gross' ailments automatically entitle him to disability benefits. Moreover, the pattern of Gross' daily activity suggests that he was not disabled from working. Gross could and did cook, wash dishes, and generally take care of a house. In his statement of living arrangements, Gross said that he acted as a caretaker in exchange for the use of the apartment in which he lived. Gross went grocery shopping and took care of his own personal needs. He walked to town every morning and cleaned up the local poolroom for about an hour, and was paid for doing so. After cleaning up, Gross would drink or socialize with the patrons of the pool hall until before dark, when he went home. The Appeals Council felt that "the claimant's daily activities are indicative of a life style rather than any restriction imposed by an impairment."

We believe that the decision of the Appeals Council was supported by substantial evidence. Accordingly, we affirm the decision of the district court.

AFFIRMED.

K.K. HALL, Circuit Judge, dissenting:

Unlike the majority, I conclude that the Appeals Council's decision to review this case conflicts with at least one portion of

this Court's decision in *Parris*. To me, the majority in this case and the Court in *Kellough*, upon which the majority relies, completely misinterpret the standard of review which this Court must follow when the Appeals Council reverses an ALJ for lack of substantial evidence. Accordingly, I dissent.

## I.

To reach a proper decision in this case, it is essential to recount in some detail the lengthy history and factual background to the appeal, much of which the majority chooses to ignore.

Gross was born on December 17, 1937, and was forty-four years old at the time of his administrative hearing. He has a seventh-grade education and until 1979 worked for fifteen to twenty years as a truck driver, sometimes as much as fifteen hours a day, six days a week. Claiming that since February, 1979, he had suffered from black out spells, arthritis, ulcers, "nerves," poor vision, and a heart condition, Gross filed his applications for disability insurance and SSI benefits on February 23, 1981. These applications were denied initially and upon reconsideration.

Following Gross' request for a hearing, the ALJ concluded that a hearing was unnecessary and awarded claimant benefits on the basis of the exhibits contained in his file. The Appeals Council reviewed this award and remanded the claim to the ALJ for resolution of conflicts in the evidence and to obtain further evidence concerning claimant's alcohol problem. The ALJ was specifically instructed to obtain a consultative psychiatric examination with psychological testing and a residual functional capacity evaluation. He was also directed to conduct a hearing.

At the administrative hearing, which took place on April 21, 1982, Gross appeared pro se and testified that he has black-out spells, poor eyesight, heart disease, and ulcers. He stated that he also suffers from memory loss, "nerves," arthritis, and pain in his lower back, left shoulder, and chest. According to Gross,

he cannot afford medication or eyeglasses. Claimant told the ALJ that he had had a "light stroke," which affects his speech. The ALJ, describing the speech impediment as "severe," had difficulty understanding Gross at the hearing. Gross denied being an alcoholic but admitted that he drinks "a good bit of wine" and about three glasses of beer a day. He stated that he drinks whiskey "once a week or once a day," depending upon how he feels.

The medical evidence presented to the ALJ documented that in 1978 claimant had been hospitalized for severe degenerative arthritis. Cervical x-rays taken at that time revealed degenerative spurring and encroachment of the cervical spine with severe limitation of motion. Following treatment, Gross was discharged as "much improved." In another 1978 report, a physician, noting that Gross had a strong odor of ethanol about him and acted drunk, concluded that claimant has a paranoid personality.

In March, 1981, claimant was referred by the Social Security Administration ("SSA") to A. Neil Johnson, M.D., a specialist in internal medicine and gastroenterology. Dr. Johnson's report concluded that Gross suffered from a significant restriction of motion of the lumbar spine, mild dextroscoliosis, and mild diffuse osteophyte formation. Dr. Johnson also noted Gross' "stuttering speech," for which he recommended a speech pathologist. Dr. Johnson's impressions were: history of syncope, i.e., temporary loss of consciousness (etiology unknown); chest pains, which were atypical of angina; and chronic lumbar pain.

Lawrence Hoy Mills, M.D., a surgeon and general practitioner, reported in March, 1981, that Gross had all the signs of chronic ethanolism. Dr. Mills stated that he did not believe claimant desired to be cured, and further that he did not think Gross was disabled.

In February, 1982, Jo Ledwell, Ph.D., a clinical psychologist, evaluated Gross on behalf of the SSA. Dr. Ledwell found no signs of organic brain damage and "[n]o

psychomotor disturbances, neurological impairments, or other physical health problems ... except for a mild visual problem." She found it "mildly difficult" to understand claimant's speech until his speech pattern was learned. Dr. Ledwell's tests showed that Gross had a verbal I.Q. of 83, which placed him in the dull-normal range of intelligence, and a memory quotient of 79. Dr. Ledwell stated that Gross denied using any alcohol in the past six months. The psychologist opined that claimant's judgment was intact when he was not under the influence of alcoholic beverages, and that his insight was quite limited. Dr. Ledwell concluded that Gross was an "old-fashioned somatizer,"[1] who manifests "hyper-sensitivity to minor dysfunction and numerous complaints without adequate physical pathology." Her diagnostic impression was hypochondriasis.

Gross was also referred to a psychiatrist, David J. Withersty, M.D., for a consultative examination. During his meeting with claimant on April 1, 1982, Dr. Withersty noted a distinct odor of alcohol when Gross spoke and reported that claimant frequently smiled inappropriately throughout the interview. Dr. Withersty observed that Gross' family history was positive for psychiatric disorders and noted that claimant acknowledged four previous psychiatric-related hospitalizations. According to Dr. Withersty, Gross was limited in a moderate to severe manner in his ability to perform a variety of functions, including understanding instructions, responding appropriately to supervision, co-workers, and work pressures, and performing simple, complex, repetitive, and varied tasks. Dr. Withersty suggested that claimant's alcohol abuse be given serious consideration, despite Gross' denials, and that further physiological evaluation and psychological testing, including

the Minnesota Multiphasic Personality Inventory ("MMPI"), be conducted.[2] The psychiatrist diagnosed a conversion disorder, a term used to connote the transformation of emotions into physical manifestations, and opined that claimant was disabled due to his psychological impairment.

The ALJ once again found that Gross was disabled and awarded benefits on the basis of Gross' testimony and the medical evidence of claimant's alcoholism and combination of impairments. On its own motion, the Appeals Council notified claimant of its intention to reverse the ALJ's decision for lack of substantial evidence of a severe impairment. Gross subsequently retained counsel and, in response to the Appeals Council's invitation to submit additional evidence prior to the final decision, submitted an evaluation by another clinical psychologist, William J. Fremouw, Ph.D.

According to Dr. Fremouw's report, dated October 21, 1982, Gross admitted to a history of chronic alcohol dependence beginning in 1971, when he was drinking a pint of whiskey every day. Gross further reported to Dr. Fremouw that he had had four psychiatric hospitalizations since 1979 and one eight-day hospitalization in 1982 for alcohol-related treatment. Gross told the psychologist that he had a history of multiple arrests for intoxication and admitted to drinking beer and wine currently on a daily basis. Dr. Fremouw reported a noticeable odor of alcohol on claimant's breath during the interview and stated that he had to have Gross frequently repeat himself in order to understand him.

Dr. Fremouw's intelligence testing revealed a memory quotient of 77, a verbal I.Q. of 78, a performance I.Q. of 73, and a full-scale I.Q. of 75, placing Gross in the borderline level of intellectual testing.[3]

---

1. Somatization is defined as a conversion of mental experiences or states into bodily symptoms. *Dorland's Illustrated Medical Dictionary*, 25th Edition, at 1438 (1974).

2. Dr. Withersty was apparently not aware that Dr. Ledwell had administered one version of the MMPI test in February, 1982. The results of

this test showed that Gross scored "beyond normal limits."

3. Dr. Fremouw concluded that these results were not inconsistent with Dr. Ledwell's findings because of the difference in tests employed. Dr. Fremouw utilized the 1981 Wechsler Adult Intelligence Scale ("WAIS") instead of the 1955 WAIS employed by Dr. Ledwell, which Dr. Fre-

Noting claimant's vision problems, Dr. Fremouw orally administered the MMPI and concluded that the results were consistent with the previous MMPI scores obtained by Dr. Ledwell. According to Dr. Fremouw, Gross' responses to the MMPI "were consistent with someone who is experiencing a high degree of psychological distress and who is requesting help" and reveal "the presence of anxiety and depression with long standing physical complaints."

Dr. Fremouw noted that Gross could understand simple instructions and carry them out under ordinary supervision and, while sober, could relate well to co-workers and supervisors. Dr. Fremouw concluded, however, that Gross' "ability to meet quality standard and production norms on a sustained basis is impaired by both his daily alcohol dependence, his vision problems, and his symptoms of depression, characterized by fatigue and forgetfulness. This combination of these difficulties would make sustained competitive work very difficult for Mr. Gross to maintain." Dr. Fremouw's diagnosis was alcohol dependence and continuous conversion disorder. He concluded that the prognosis for improvement was poor, even with treatment, because of Gross' lack of insight into his psychological problems and his lack of motivation to alter his drinking.

After considering the entire record in the case, including the post-hearing psychological report of Dr. Fremouw, the Appeals Council reversed the ALJ, concluding that Gross has no severe impairment. Claimant's arthritis was dismissed as not disabling, because "there is no medical evidence which shows any further complaints or treatment to his neck" since his 1978 hospitalization, and because recent lumbar x-rays, showing mild degenerative arthritis and limitation of motion, were unaccompanied by any associated neurological, sensory, or reflex abnormalities. The Appeals Council further found that Gross' visual impairment could be corrected by glasses,

that his pain would not interfere with basic work activities, and that his speech problem did not hinder communication.

As for claimant's alcohol problem, the Appeals Council concluded that at most it was mild and not so involuntary as to preclude sustained work, given the lack of treatment and any specific clinical findings. According to the Appeals Council's assessment of the psychological reports of Dr. Ledwell and Dr. Fremouw, Gross retained the ability to perform work-related tasks. Dr. Withersty's conclusion that claimant was disabled was discounted as not consistent with the psychological findings. It was the Appeals Council's opinion that claimant's limited daily activities "are indicative of a lifestyle rather than any restriction imposed by an impairment."

## II.

In *Parris*, this Court considered the provisions of the Secretary's regulations, which specify the conditions under which the Appeals Council is authorized to review decisions of an ALJ. Pursuant to 20 C.F.R. § 404.970:

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

(b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

mouw described as obsolete and which tested five to six points higher than the 1981 WAIS

edition.

The *Parris* Court interpreted these provisions to mean that "the Appeals Council does not have unbridled discretion to overturn an ALJ's decision with which it disagrees, but may only do so if one of these four grounds [enumerated in 20 C.F.R. § 404.970(a)] is present." 733 F.2d at 325. If our decision in *Parris* that the Appeals Council does not have unbridled discretion means anything, then this Court must have the right to review the ALJ's decision for substantial evidence to determine whether the Appeals Council properly followed the Secretary's review regulations. Any other interpretation totally insulates the Appeals Council's decision to review a case from judicial scrutiny and renders meaningless the conclusion reached by the *Parris* Court on this point.[4]

Moreover, this approach is entirely consistent with the Court's responsibility to review other administrative decisions. For example, in *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), which involved the reversal of a hearing examiner's decision by the National Labor Relations Board, the Supreme Court made clear that a reviewing court was not barred from setting aside the Board's final decision when, after reviewing all the evidence in the record, the court could not find substantial evidence to support the Board's reversal. In so holding, the Supreme Court observed as follows:

We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. *The findings of the examiner are to be considered along with the consistency and inherent probability of testimony.*

*Id.* at 496, 71 S.Ct. at 469 (emphasis added). *Cf. Winn-Dixie Stores, Inc. v. NLRB*, 448 F.2d 8, 12 (4th Cir.1971) ("The Board can overrule the Trial Examiner, even on findings of fact, but the Examiner's decision is part of the record which must be considered when determining whether the substantial evidence on the record as a whole supports the findings of the Board.") Similarly, in a black lung case, this Court recently concluded that the Benefits Review Board erred when it overturned an ALJ's decision to award benefits, where there was substantial evidence in the record, considered as a whole, to support the original decision. *Zbosnik v. Badger Coal Company,* 759 F.2d 1187 (4th Cir.1985).[5]

---

**4.** I cannot accept the *Kellough* Court's unsupported conclusion that *Parris'* restriction of the Secretary's reviewing powers under 20 C.F.R. § 404.970 was mere dicta. Nor do I accept the gloss placed upon that portion of *Parris* by the *Kellough* Court, which now concludes that "[a]t most, the *Parris* dicta on this point implies that where the basis for an Appeals Council decision on *sua sponte* review is demonstrably outside the scope of the grounds specified for § 404.970(a) review, this might violate the regulation." *Kellough v. Heckler,* 785 F.2d 1147 (4th Cir.1986), at 1149–50, n. 2.

Quite simply, *Parris* does not say what *Kellough* would have it say. The Court in *Parris* specifically found that the Appeals Council has limited power to review an ALJ's decision, but then went on to state in that case that *"[o]n the basis of the record before us,* we cannot conclude that the Appeals Council failed to follow the Secretary's own regulations and applied an

improper standard of review." *Parris,* 733 F.2d at 326 (emphasis added). Perhaps it is impossible to reconcile the conclusion reached by *Parris* concerning the Appeals Council's limited review powers with the case's subsequent conclusion that judicial deference is owed to the Appeals Council. If that is so, however, then the proper way to resolve the matter is through *en banc* review—not by rewriting a portion of *Parris* and labeling it as dicta.

**5.** Unlike the *Kellough* Court, *Kellough,* at 1150, n. 3, I see no meaningful distinction between the Secretary's regulations in social security cases and the regulations which limit review by the Benefits Review Board of an ALJ's decision in a black lung case. *Cf.* 20 C.F.R. § 404.970(a), which we interpreted in *Parris* to allow Appeals Council review only for abuse of discretion, error of law, lack of substantial evidence, or broad policy or procedural issues, to

I can only conclude that in light of the Secretary's regulations, as interpreted by this Court in *Parris*, this same standard of review applies when we are confronted with conflicting opinions of an ALJ and the Appeals Council in a social security case. In this case, as the record clearly demonstrates and as the magistrate specifically noted, there was undoubtedly "substantial evidence from which it could be found that one or more of the plaintiff's impairments is 'severe.'" Thus, the Appeals Council lacked authority to overturn the ALJ on these grounds. Here, Gross had been twice found disabled by an ALJ. Furthermore, the Secretary's consultative psychiatrist had concluded that claimant was disabled due to his psychological impairment, and the record is replete with documentation of Gross' long standing alcoholism, as well as his other physical and mental impairments. The fact that Gross cannot afford medical treatment for his impairments does not preclude a finding of disability. *See Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984).

Nor does claimant's denial of a drinking problem preclude a finding of alcoholism, because such denials from a true alcoholic are typical of the disease and are inherently unreliable. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir.1979); *Adams v. Weinberger*, 548 F.2d 239, 245 (8th Cir. 1977). Dr. Ledwell's evaluation, on which the Appeals Council heavily relied, virtually ignores Gross' alcoholism in drawing the conclusion that Gross was a hypochondriac.

Moreover, even Dr. Ledwell conceded that claimant's insight was limited and that his judgment was intact only when not under the influence of alcohol. Furthermore, Dr. Ledwell's description of Gross as a somatizer is not inconsistent with Dr. Withersty's diagnosis of a conversion disorder. The report of Dr. Fremouw, submitted by claimant to the Appeals Council after it announced its decision to review the case, provides further evidence of Gross' disability due to a conversion disorder and alcoholism and only confirms that the ALJ's decision was correct.[6]

### III.

Under the circumstances presented by this case, I would find that the Secretary's reversal of the ALJ's decision for lack of substantial evidence violated the agency's own review regulations. Consequently, I would reverse the decision of the magistrate affirming the Appeals Council, and would remand the case for an award of benefits to Gross.

20 C.F.R. § 802.301, governing the Benefits Review Board's scope of review:

    The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law. Thus, I believe that the Court's *Zbosnik* decision is relevant to our determination in this case.

**6.** In my view, the submission of Dr. Fremouw's report did not authorize the Appeals Council to conduct a *de novo* review of the evidence. Under 20 C.F.R. § 404.970(b), if new and material evidence is submitted *with a request for review,* the Appeals Council will evaluate the entire record. By its own terms, this provision is only triggered where a claimant requests review by the Appeals Council and not, as here, where merely cumulative evidence is provided to clarify or explain evidence already contained in the record. It is not entirely clear whether the Appeals Council conducted its review of these proceedings under a substantial evidence standard or under the broader *de novo* standard. I would find that under either standard of review the result in this case is the same and that the ALJ's decision should not have been disturbed.