846 F.2d 72
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gaylord MORRIS, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant- Appellee.
 No. 87-1175.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 17, 1988.
Decided April 27, 1988.
 
 Gregory W. Evers, Franklin W. Kern, L.C. on brief for appellant.
 Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Assistant, Regional Counsel, Marjorie Scharpf, Supervisory Assistant, Regional Counsel, Office of General Counsel, Department of Health & Human Services, Michael W. Carey, United States Attorney, Stephen M. Horn, Assistant United States Attorney on brief for appellee.
 Before JAMES DICKSON PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Gaylord Morris appeals from a judgment of the United States District Court for the Southern District of West Virginia affirming a final decision of the Secretary of Health and Human Services denying Morris' application for social security disability insurance benefits. The district court found that the Secretary's decision was supported by substantial evidence. We affirm.
 
 
 2
 * Morris initially filed a claim for disability insurance benefits on July 16, 1980, alleging disability commencing October 31, 1979, due to a severe leg injury. In connection with this application, Morris received disability benefits for the period from October 1979 to April 1981. Morris filed a second claim for disability insurance benefits in October 1982 alleging disability commencing August 23, 1981, when he refractured his leg while riding a bicycle. This second application was denied by the Secretary at the initial determination level and that denial was not appealed. Finally, Morris filed the claim for disability insurance benefits that is the subject of the present appeal on November 23, 1983, alleging disability commencing in 1979 when he first injured his leg and continuing through January 1983 when he wrote in his application that he began working for Rader Trucking Company.
 
 
 3
 In his current application for benefits, Morris noted that his claimed disabling condition was the continued trouble he experienced with his leg. However, at a hearing before an administrative law judge (ALJ) on July 19, 1984, after his claim was initially denied by the Secretary, Morris alleged continuing disability due not only to his leg injury but also to an arm injury. Morris also alleged emotional and substance abuse problems and breathing difficulties. After the 1984 hearing the ALJ affirmed the denial of benefits to Morris and the Appeals Council declined requested review. The case was remanded to the Appeals Council in November 1985 by the United States District Court for the Southern District of West Virginia, however, for reconsideration under the then recently revised regulations regarding evaluation of mental impairments. See 20 C.F.R. Sec. 404.1520a. The Appeals Council in turn remanded the case to a second ALJ who, after a de novo hearing, issued a recommended decision denying Morris' claim for disability insurance benefits on October 10, 1986.
 
 
 4
 At the hearing on remand from the district court the ALJ was presented with medical evidence pertaining to the 1979 injury which Morris sustained to his left leg and to the several subsequent injuries to that leg as well as reports from a period of voluntary chemical dependency treatment that Morris underwent at the Seneca Mental Health Center from May 1983 to March 1984. A psychiatric assessment of Morris completed in May 1986 by Dr. Ahmed Faheem was also before the ALJ. A vocational expert, Patricia McFann, testified at the hearing on remand as did Morris and his wife.
 
 
 5
 Based upon evidence at the hearing, the ALJ determined that Morris last met the special earnings requirements of the Social Security Act on December 31, 1982. The ALJ then carefully followed the sequential evaluation process established in the Social Security Administration regulations, see 20 C.F.R. Sec. 404.1520, reaching the fifth step in the sequence after determining that Morris' leg injury, while not equal to any of the Listings of Impairments in Appendix 1, Subpart P of the Regulations, prevented him from being able to perform his past relevant work as a logger or as a pipeline laborer during the critical period preceding December 31, 1982. Based on the medical evidence of record, Morris' own testimony, and Morris' status as a younger individual, born September 6, 1957, see 20 C.F.R. Sec. 404.1563(b), with a high school education and unskilled work history, the ALJ then determined that Morris had the residual functional capacity to perform light work as defined in 20 C.F.R. Sec. 404.1567(b).
 
 
 6
 Specifically, the ALJ found that Morris' leg injury had healed sufficiently from the August 1981 refracture for Morris to perform light work by June of 1982. The ALJ also found that Morris had presented no evidence that indicated that he had a significant mental impairment that would have prevented the performance of basic work activities on or before December 31, 1982. Morris' subjective complaints of pain were found not to be credible to the extent of contraindicating his ability to perform light work and testimony regarding the fracture of Morris' left elbow on April 27, 1986 was disregarded as the injury occurred without the time period when Morris met the Act's earnings requirements. Finally, referring to 20 C.F.R. Sec. 404.1569 and Rule 200.20 of Table No. 2 of Appendix 2 to Subpart P of the Regulations, and further relying on the hearing testimony of the vocational expert, the ALJ found that a significant number of jobs specifically suited to Morris' arm and leg exertional impairments and non-severe nonexertional impairments, see 20 C.F.R. Sec. 404.1521, existed in the national economy. A psychiatric review technique form appended to the ALJ's decision documented the ALJ's finding that Morris had no medically determinable psychiatric impairment prior to December 31, 1982.
 
 
 7
 The Appeals Council adopted the ALJ's October 10, 1986 recommended decision with a few modifications pertinent to this appeal. The Appeals Council determined that Morris last met the Act's special earnings requirements on December 31, 1984, rather than December 31, 1982, as had been determined by the ALJ. The Appeals Council then examined the evidence of record and determined that between December 31, 1982 and December 31, 1984, Morris had not sustained any new impairments nor had his previously alleged impairments worsened. In this regard the Appeals Council affirmed that the evidence showed that Morris' leg was healed sufficiently to permit the performance of light work by June 1982. The Appeals Council also found that the evidence of Morris' participation in individual and group therapy for mixed substance abuse from May 27, 1983 to March 21, 1984, reflected that he had quickly gained great insight into his substance abuse problem and was diagnosed as having a good prognosis for recovery. Accordingly, in completing a new Psychiatric Review Technique form to reflect the entire period in which Morris met the earnings requirements, the Appeals Council documented its finding that Morris "has a medically determinable mental impairment which did not affect his residual functional capacity on or before December 31, 1984." On review pursuant to 42 U.S.C. Sec. 405(g), the district court affirmed the Appeals Council's decision as supported by substantial evidence. This appeal followed.
 
 II
 
 8
 The February 17, 1987 decision of the Appeals Council adopting the ALJ's October 10, 1986 recommended decision with modifications constitutes the final decision of the Secretary which we must uphold if supported by substantial evidence. See Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir.1986); Kellough v. Heckler, 785 F.2d 1147, 1151 (4th Cir.1986). All parties agree that the Secretary properly determined that Morris was unable to perform his past relevant work and that therefore the burden was upon the Secretary to establish that Morris had the residual functional capacity to perform other work considering "both his remaining physical and mental capacities ... and his vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall v. Harris, 658 F.2d 260, 265 (4th Cir.1981). It is also agreed that Morris is a younger individual with a high school education and only unskilled work experience. The only substantial issue raised on appeal is whether the Secretary failed properly to consider evidence of the psychiatric assessment of Morris performed by Dr. Ahmed Faheem in determining that Morris had the residual functional capacity to perform light work during the critical time period, a capacity which the Secretary found was not limited by Morris' mental impairments. A related issue is whether the ALJ's failure to present the results of Dr. Faheem's assessment of Morris to the vocational witness at the hearing undermines the Secretary's determination that specific alternative jobs that Morris can perform are available in the national economy. See 20 C.F.R. Sec. 1520(f); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir.1981).
 
 
 9
 We find the Secretary's determination that Morris did not have a mental impairment that limited his residual functional capacity to do light work to be supported by substantial evidence. The evidence of record reveals that Morris held several part-time jobs and lived a fairly normal daily life that included hunting, fishing, tinkering with cars, chopping wood, and helping on his father's farm. Morris' several applications for disability have not claimed disability relating to mental impairments. Moreover, there is no medical evidence in the record regarding Morris' emotional and substance abuse problems prior to reports pertaining to his voluntary treatment for substance abuse at the Seneca Mental Health Center from May 1983 to March 1984. As the Appeals Council noted, these reports confirm that Morris' symptoms were reasonably controlled within three months of the commencement of treatment and his prognosis for recovery was good. Morris' own complaints of substance abuse problems or "symptoms" prior to treatment are not sufficient to establish his inability to perform light work, see 20 C.F.R. Sec. 1525, Sec. 1528, and given his immediate response to treatment, these statements do not refute the Secretary's determination that he was capable of performing light work during the critical time period. Cf. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986) ("If a symptom can be reasonably controlled by medication or treatment it is not disabling.").
 
 
 10
 Morris' reliance on Dr. Faheem's assessment as undermining the Secretary's non-disability determination is misplaced. Dr. Faheem performed a psychiatric assessment of Morris in May 1986, long after Morris no longer met the special earnings requirement. In this regard it is less probative than the Seneca Mental Health Center reports that were made during the critical time period. Cf. Foster v. Heckler, 780 F.2d 1125, 1129-30 (4th Cir.1986). To the extent, however, that Dr. Faheem's report can be considered to relate back to the critical time period, it actually supports the Secretary's determination that Morris retained the residual functional capacity to perform light work and that such capacity was not affected by his mental impairments.
 
 
 11
 Dr. Faheem wrote that Morris believed his problems to be predominantly physical and that Morris reported to Dr. Faheem that he did not drink significantly anymore and had not used drugs for two or three years. Morris denied feelings of hopelessness, tiredness, or any suicidal tendencies. Dr. Faheem reported that Morris had described a fairly routine daily agenda including hunting, fishing, yard work, tinkering with cars, and playing with his children as well as infrequent socializing with others. Dr. Faheem found that Morris had a dull average intelligence, that his attention and concentration were normal, that his judgment and problem solving abilities were intact. Because of Morris' self-reported constant nervousness, and history of substance abuse and recovery, Dr. Faheem diagnosed Morris as having "problems with chronic anxiety" and noted Morris' history of substance abuse. Dr. Faheem also found that Morris' mental impairment had no organic elements and wrote that Morris would be able to function satisfactorily at a job so long as he stayed off drugs and alcohol. Referring to his findings that Morris had normal concentration abilities and average intelligence, Dr. Faheem found that Morris' mental state did not preclude his being able to "understand, remember and carry out detailed, but not complex job instructions" and that Morris had a satisfactory ability to likewise deal with a simple job instructions. This is sufficient to permit the performance of basic work activities. See 20 C.F.R. Sec. 1521(b)(3). Similarly, Dr. Faheem found that Morris was functionally able to adjust personally and socially. In short, Dr. Faheem's assessment supports the Secretary's finding that Morris' mental impairments do not limit his ability to perform basic work activities.
 
 
 12
 Because the Secretary's determination that Morris' residual functional capacity to perform light work was not affected by his mental impairments is supported by substantial evidence, it was not necessary for the Secretary to have considered vocational evidence of the existence of jobs which Morris could perform within the light range of work in light of those impairments. See 20 C.F.R. Sec. 404.1569; Hall v. Harris, 658 F.2d at 265-66. Nevertheless, the vocational expert witness at the hearing was permitted to testify, in response to a hypothetical posed by Morris' representative that emotional disabilities of the type described--"inability to associate with people, to go out and visit and having a history of [substance] abuse and ... depression--would not affect Morris' vocational capacity to perform the specific alternative available jobs listed by the vocational witness at the hearing unless these "inabilities were considered to be of a severe degree." As we have already concluded, the record substantially supports the Secretary's conclusion that Morris' mental impairments did not affect his ability to perform basic work activities. The Secretary, therefore, met its burden of proving that Morris was capable of performing other work available in the national economy.
 
 III
 
 13
 The remaining challenges to the Secretary's denial of social security benefits to Morris raised on this appeal are without merit. The Secretary properly credited Morris' subjective complaints of pain due to his leg injury only to the extent they contraindicated medium or heavy work during the critical period. The record reveals that Morris was physically active during that period and remains so at present, held several parttime jobs, and has found it unnecessary to take any prescription pain medicine or to further consult a physician regarding his leg. See Gross v. Heckler, 785 F.2d 1163, 1166 (1986). Regarding his alleged lung impairment, Morris fails specifically to identify any evidence in this regard that undermines the Secretary's determination that Morris has residual functional capacity to perform light work.
 
 
 14
 We agree with the district court that the decision of the Secretary is supported by substantial evidence and, accordingly, we affirm.
 
 
 15
 AFFIRMED.