**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RANDALL A. HOLLER,
Plaintiff-Appellant,

v.

No. 95-2605

SHIRLEY S. CHATER,
COMMISSIONER OF SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
Frank W. Bullock, Jr., Chief District Judge.
(CA-94-137-6)

Submitted: April 16, 1996

Decided: May 9, 1996

Before HALL, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

H. Russell Vick, Greensboro, North Carolina, for Appellant. Wal-
ter C. Holton, Jr., United States Attorney, Gill P. Beck, Assistant
United States Attorney, Arthur J. Fried, General Counsel, Ran-
dolph W. Gaines, Acting Principal Deputy General Counsel,
A. George Lowe, Acting Associate General Counsel, Litigation Divi-
sion, Eileen A. Farmer, Office of the General Counsel, SOCIAL
SECURITY ADMINISTRATION, Baltimore, Maryland, for Appel-
lee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Randall A. Holler, age 49, applied for disability insurance benefits in April 1992, for a period of disability commencing May 18, 1991. After an initial denial, the Social Security Commission held a hearing and the Administrative Law Judge (ALJ) denied benefits. The Appeals Council declined to review the decision of the ALJ and the decision became final on January 28, 1994. Holler then filed a complaint in the district court seeking review of the Commission's findings. The district court adopted the recommendation of the magistrate judge and denied relief. Holler contends that the ALJ improperly discounted the opinion of Holler's treating physician, that the ALJ's findings of residual functional capacity and credibility of Holler's complaints of pain were not supported by substantial evidence, and that the district court did not conduct a de novo review after Holler filed objections to the magistrate judge's report and recommendation. We affirm.

I

Holler has a history of a partial hemilaminectomy [1] with removal of a herniated disc in March 1986 and a partial hemilaminectomy with removal of a herniated disc with foraminotomy[2] and decompression of nerve roots. Holler's work history includes work as a letter carrier before he stopped work due to back pain and an inability to walk or lift in May 1991. Holler sought treatment from Dr. Russell Amundson for lower back and leg pain in May 1991.

_____

[1] Surgical removal of a vertebral lamina on one side only. Dorland's Illustrated Medical Dictionary, 745 (28th ed. 1994).

[2] The operation of removing the roof of intervertebral foramina, done for the relief of nerve root compression. Dorland's, 650-51.

2

In October 1991, Holler sought treatment from Dr. William Brown, a neurosurgeon. Dr. Brown's examination revealed a straight leg raising test slightly positive due to spasm and pain on forward flexion of the spine. Dr. Brown referred Holler to Dr. Taft, an orthopedic surgeon. After Dr. Taft examined Holler, he and Dr. Brown agreed that Holler needed surgical intervention and a lumbar fusion should be performed.

In November 1991, Drs. Brown and Taft operated on Holler. Dr. Brown performed a bilateral lumbar hemilaminectomy and medial facetectomy[3] at L4-5, and Dr. Taft performed a spinal fusion. The discharge summary reflects that Holler no longer had leg pain and was moving without difficulty. Drs. Taft and Brown followed up with Holler and remarked on Holler's improvement through February 1992. In February, Dr. Brown noted that Holler's improvements still did not allow him to do any heavy lifting, repetitive bending, or prolonged walking. He also noted that while Holler would likely experience intermittent low back pain in the future, it should not be incapacitating.

In late March and April 1992, Holler returned to Drs. Taft and Brown complaining of lower back and bilateral leg pain. During Holler's April and March visits to Drs. Taft and Brown he continued to complain of leg and back pain, but his doctors did not make any objective findings of the cause of the pain. In April, Dr. Brown assessed that Holler suffered from a lumbosacral sprain. By the end of April, Dr. Brown noted that Holler's leg pain improved fifty to seventy-five percent.

In an office note dated July 10, 1992, Dr. Brown recorded that Holler was found ineligible for Social Security benefits because he could perform a job where he could sit. The note reflects that Holler said his back and leg pains were worse and that standing or sitting aggravated the pain. Dr. Brown noted that according to Dr. Taft, Holler's x-rays looked good. He also noted that Holler was able to drive or walk for up to an hour, but could only sit for fifteen to twenty minutes before pain developed, could lift up to ten pounds, and was not able to squat. Dr. Brown's disposition states, "I talked with the patient

_____

[3] Excision of the articular facet of a vertebra. <u>Dorland's</u>, 600.

3

about the possibility of his working. It is my strong opinion that this patient is totally disabled and is not even able to perform a sedentary job." Follow up visits with Dr. Brown revealed restriction of the lumbar range of motion, but did not reveal pain on the range of motion Holler was able to achieve. Dr. Brown performed a myelogram in September 1992 and Holler reported that Dr. Brown told him that the myelogram did not show any nerve damage.

At the hearing before the ALJ, Holler testified that his daily activities included driving to the grocery store, post office, and bank. He also testified that he is unable to lift items, but can place items into a grocery cart if someone else takes them out of the cart. He attempts to help with housework, but can only clean the bathroom or occasionally cook. He said he was able to sit for twenty to thirty minutes and stand for thirty minutes at a time, but after that must change positions to gain relief from the pain.

At the administrative hearing, the parties agreed that the ALJ would submit questions to a vocational expert (VE). The ALJ submitted questions with the physical restrictions reflected in Drs. Taft and Brown's medical notes. Specifically, the questions included a restriction that lifting is limited to ten pounds, and that after fifteen to twenty minutes of sitting, the position would need to be changed. The VE responded that considering the person's past work history and physical limitations, he could perform the following jobs: general ledger bookkeeper, accounting clerk, and night auditor. The VE stated that these occupations would be appropriate if the individual could sit for approximately six to seven hours each day.

The ALJ found that Holler was not disabled within the meaning of the Social Security Act. The ALJ found that Holler suffered from severe post lumbar laminectomy syndrome, but that he did not have an impairment, or combination of impairments, equal to a presumptive disabling impairment. He also found that Holler's complaints of pain were not credible to the degree of disabling pain alleged, such that he would be prevented from performing light duty work. Considering the medical evidence and testimony, the ALJ found that Holler had the residual functional capacity to perform the requirements of light duty work with the restrictions that no squatting, repeated bending, or prolonged sitting or standing (for more than an hour at a time)

4

was required. Finally, the ALJ found that, based upon the conclusions of the VE and the Medical-Vocational Guidelines, jobs existed in the national economy in the light work category with the appropriate restrictions.

II

This court, like the district court, will uphold the Commissioner's disability determination if it is supported by substantial evidence. 42 U.S.C. § 405(g) (1988). The Supreme Court defined substantial evidence as "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is `substantial evidence.'" Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1962)).

As the presiding officer at the administrative hearing, the ALJ makes factual determinations and resolves evidentiary conflicts, including inconsistencies in the medical evidence. Reviewing courts do not weigh evidence anew or substitute their judgment for that of the Commissioner, provided that substantial evidence supports the Commissioner's decision. Hays, 907 F.2d at 1456. Because substantial evidence supports the ALJ's findings here, there is no reason to disturb the decision of the Commissioner.

III

Holler claims that the district court erred by allowing the ALJ to discount the opinion of his treating physician, Dr. Brown. He alleges that the ALJ relied upon evidence from physicians who were no longer treating him and were not in a position to know of all his physical restrictions.

The ALJ must consider objective medical facts and opinions and the diagnoses of treating and examining doctors, which constitute a

5

major part of the proof in disability cases. <u>McLain v. Schweiker</u>, 715 F.2d 866, 869 (4th Cir. 1983). Pursuant to 20 C.F.R.§ 404.1527(d)(2) (1995), the Commissioner must generally give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for disability insurance benefits. 20 C.F.R. § 404.1527(d)(4) (1995). The Commissioner is ultimately responsible for determining whether the claimant is disabled under the Act, and a treating physician's opinion that the claimant is disabled does not necessarily mean that the claimant will be found disabled. 20 C.F.R. § 1527(e) (1995).

The ALJ's rejection of Dr. Brown's finding of total disability is supported by substantial evidence. Dr. Brown's statement that it was his opinion that Holler is totally disabled and unable to perform even a sedentary job, due to his limited range of motion and chronic pain, came in July 1992. In November 1991, Drs. Taft and Brown operated on Holler to relieve his initial complaints of back and leg pain. After surgery Holler improved, and upon his discharge from the hospital reported no pain. Both Dr. Taft and Dr. Brown participated in Holler's post-surgical treatment. From November to March both noted Holler's improvement; however, the doctors noted that Holler was still restricted in his ability to perform heavy lifting, prolonged walking, or repetitive bending.

In March 1992 Holler began to complain of a return of back and leg pain. At this time Dr. Taft examined Holler and did not record any medical reason for the pain and instead noted that x-rays showed excellent position of internal fixation devices and a good strong lateral fusion. On April 9, 1992, Holler again saw Dr. Taft. Dr. Taft recorded that Holler had improved. At the end of April, Holler saw Dr. Brown. Dr. Brown observed that Holler's leg pain had improved fifty to seventy-five percent. The next office note from Dr. Brown does not come until July 10, 1992. In this report Dr. Brown notes that the Social Security Administration found Holler to be ineligible for disability benefits. He states that Holler reports his back and leg pain had worsened. The note states that Dr. Taft says that Holler's x-rays look good. He also lists Holler's activities as being able to drive and walk for up to an hour and sit for twenty minutes before developing

6

pain. He notes as restrictions an inability to lift over ten pounds and an inability to squat. Dr. Brown's disposition on that date was to continue the present treatment. He opined that Holler was totally disabled.

Dr. Brown's abrupt opinion of "total disability" is based upon Holler's subjective complaints of pain and his limited range of motion. Dr. Brown's conclusory finding of total disability is not supported by x-rays or any other objective medical evidence. [4] In addition, Dr. Taft, who had also recently treated Holler, did not draw the same conclusion. Less weight may be given to the opinion of a treating physician when the diagnosis of disability is brief and conclusory. See Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). A determination of disability is the prerogative of the Commissioner, not the treating physician, and a brief, conclusory letter by a treating physician is not dispositive. Houston v. Secretary of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984).

In light of the contradictory opinions of Dr. Taft and Dr. Brown, the two most recent treating physicians, and Dr. Brown's brief and objectively unsupported statement of disability, we find that the weight given to Dr. Brown's opinion of disability was not improper.

IV

Holler alleges that the ALJ's assessment of his residual functional capacity is without substantial evidence because the medical evidence and the VE's responses do not demonstrate that he can perform the full range of light work, specifically, that he would be able to stand for a significant amount of time. An individual's residual functional capacity is what that person can still do despite physical and mental impairments. 20 C.F.R. § 404.1545(a) (1995). What the ALJ actually found was that Holler could perform the requirements of light work with the limitations of no squatting or repeated bending and no prolonged walking or sitting for more than an hour at a time. Without

---

[4] Dr. Brown's opinion regarding Holler's physical limitation was not discounted. Rather, it was used as the basis for the questions posed to the VE.

7

these restrictions, the ALJ found, a finding of not disabled would be directed. <u>See</u> 20 C.F.R. Part 404 Subpart P, App. 2 § 202.22 (1995).

Given Holler's nonexertional impairments, however, the grids could only serve as a guide as to whether Holler was disabled, and

the testimony of the vocational expert was necessary. <u>See Walker v. Bowen</u>, 889 F.2d 47, 49-50 (4th Cir. 1989). The questions posed to the VE accurately described Holler's limitations as found by the ALJ.[5] The VE identified three jobs which Holler was capable of performing despite his limitations, and testified that these jobs existed in significant numbers in the national economy. Under these circumstances, we find that substantial evidence supports the decision to deny benefits.

V

Holler claims that the ALJ erred in finding that his claims of subjective symptoms were not credible to the extent that he would not be able to perform light work with the found restrictions. On appeal, Holler argues first that the credibility rulings are error because an inconsistency regarding the value of Feldene is not enough to discredit his complaint of pain. Second, Holler contends that the daily activities cited by the ALJ and the magistrate judge do not detract from his credibility because these activities did not require greater effort than Holler testified he was capable of. Finally, he argues that the medical evidence supported his complaints of pain.

_____

[5] Holler disputes that he could sit for one hour, as found by the ALJ. The questions posed to the VE, however, included the restriction that Holler could only sit for fifteen to twenty minutes at one time. The VE stated that jobs existed with this restriction. Holler next argues that he could not sit for the six to seven hours required by the jobs the VE found to fit Holler's requirements. He states that they would require prolonged sitting, which the ALJ found he could not do. The VE did not state that the hours of sitting would be for one period of time and, in fact, stated that these jobs would allow Holler to stand and change positions from time to time, so that prolonged sitting would not be required.

8

In the case of allegations of pain, the rule of this court is:

> Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree . . . , if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or effect of pain is not determinative.

SSR 90-1p; see Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). The ALJ must make a credibility determination based upon all the evidence in the record. This court will not disturb such a properly supported credibility determination. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The ALJ noted that all x-rays and a myelogram taken after the November 1991 surgery showed good results. He also noted that from March to April 1991 Holler's straight leg raising percentages increased despite his complaints of increased pain. The ALJ considered that Dr. Brown stated that Holler would have limited intermittent low back pain, but that it should not be incapacitating.

The ALJ evaluated Holler's testimony regarding his daily activities and compared it to his testimony regarding his pain and restrictions. This court has recognized that daily activities may support the Commissioner's determination that a plaintiff is not disabled. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986)."The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). The ALJ cited Holler's testimony that he drove on short trips, cleaned, cooked, and washed dishes occasionally, that he went

9

grocery shopping alone, and that he made short trips to get his hair cut and visit relatives. The ALJ found that these activities tended to show that Holler's claims of inability to sit or lift were exaggerated. In addition he noted that Holler's demeanor while testifying was lacking in candor; he gave conclusory and evasive answers. We find that in light of the ALJ's thorough examination of the medical and testimonial evidence that his determination of credibility was proper.

VI

After receiving the magistrate judge's recommendation denying relief on Holler's claim, Holler filed timely objections to the report. Holler claims that he could not have received a de novo review from the district court judge because the judge presided over a jury trial on the same day that he signed the order. Holler admits, however, "that he is not in a position to state with absolute certainty that he did not receive a de novo review." While a de novo review is the proper standard when a party has filed objections to the magistrate judge's recommendation under Fed. R. Civ. P. 72(b), there is no evidence that the district court judge did not use the proper standard of review. We therefore find that this claim is without merit.

VII

Finding no error with the district court judgment, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

10