**Wanda RUIZ, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

**No. 3:97CV2288(AHN).**

United States District Court, D. Connecticut.

Sept. 9, 1998.

1. On September 29, 1997, Kenneth S. Apfel was sworn in as Commissioner of Social Security.

Meryl Anne Spat, Waterbury, CT, for Plaintiff.

Deirdre Anne Martini, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

### RECOMMENDED RULING ON PENDING MOTIONS

FITZSIMMONS, United States Magistrate Judge.

Plaintiff, Wanda Ruiz, filed this action seeking review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner denying her claim for Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff filed two motions for summary judgment and defendant moved for an order affirming the decision of the Commissioner. Upon consideration of the motions filed by plaintiff and defendant, the court recommends that plaintiff's motions be denied and defendant's motion be granted.

Pursuant to Rule 25(d)(1), Fed.R.Civ.P., he is automatically substituted as the defendant in this action.

## BACKGROUND

Plaintiff was born on May 8, 1966. (*See* R. 82.)[2] She has a seventh or eighth grade education. (*See* R. 38, 91.) She has never worked. (*See Id.*) Plaintiff claims that she became disabled in January 1996,[3] as a result of depression and anxiety. (*See* R. 87.)

Plaintiff filed an application for SSI benefits on January 31, 1996. (*See* R. 82–85.) The application was denied on April 23, 1996. (*See* R. 64–67.) In response to plaintiff's request for reconsideration filed on May 6, 1996, (*see* R. 68–69), the agency, on June 25, 1996, issued a notice of reconsideration upholding the denial of benefits. (*See* R. 70–73.) Plaintiff filed her request for a hearing before an ALJ on July 15, 1996. (*See* R. 74–76.)

The hearing before the ALJ was held on December 11, 1996. (*See* R. 34–61.) Plaintiff appeared with counsel at the hearing. (*See* R. 36.) She stated that she experiences depression and anxiety as well as panic attacks. She is afraid to work around people and does not know how to relate to people. She also cannot think "right" because she takes medication. (*See* R. 39.)

Plaintiff testified that she lives alone with her three school-age children. (*See* R. 38, 40.) Her sister visits her daily from 9:00 a.m. until 6:30 p.m. (*See* R. 43.) Plaintiff reported in two activities questionnaires, one undated and one completed on February 9, 1996, that her sister lived with her. (*See* R. 95, 106.) During the week, plaintiff gets up about 7:12 a.m. and gets her two younger children dressed for school. Her sister helps her manage the children after school. On the weekends, plaintiff is unable to care for her children because of her depression, so her sister cares for them. (*See* R. 40.) When asked whether she prepared breakfast for the children, the plaintiff responded that the children eat breakfast in school. (*See Id.*) During the day, plaintiff stays in the house. Depending on her depression, she sometimes does routine housework. She tries to attend a support group/social club to deal with people and spends time with a friend. They talk or go out to eat. (*See* R. 41, 42.) Plaintiff stated that her sister accompanied her to do the monthly grocery shopping. When she is around people, plaintiff experiences panic attacks which cause her heart to beat quicker and make her feel sweaty and shaky. (*See* R. 42.) She becomes depressed and feels that she is not worth anything. (*See Id.*) Plaintiff has no hobbies; she spends her time watching television. (*See* R. 44.)

Plaintiff testified that she had attempted suicide in 1984. Her current problems stem from an abusive relationship in 1994. (*See Id.*) At that time she was treated at the Wheeler Clinic and entered a day treatment program lasting one month. (*See* R. 45–46 .) She has attended weekly group counseling sessions since 1994. (*See* R. 43, 46.)

Plaintiff's friend testified on her behalf. (*See* R. 55–59.) The friend stated that she sees plaintiff daily. (*See* R. 55.) Plaintiff looks "like a zombie." She is always in a bad mood and isolates herself from people. (*See* R. 55–56.) The friend witnessed one of plaintiff's panic attacks about a year before the hearing; she described plaintiff as acting "crazy." (*See* R. 56 .) Plaintiff does not want to wake up in the morning and sleeps during the day. (R. 56–57.) On some days, plaintiff does not send her children to school because she is tired. Often the friend will telephone plaintiff to remind her to get the children ready for school. (*See* R. 57.)

Plaintiff's friend stated that plaintiff's sister does the housework during the day while plaintiff visits friends. The visits consist of a short talk over a cup of coffee. (*See* R. 57–58.) Plaintiff's friend stated both that plaintiff's sister did the cooking and that plaintiff's sister helped with dinner only occasionally. (*See* R. 57.)

The ALJ also heard testimony from a vocational expert. (*See* R. 48–54.) The voca-

---

**2.** The administrative record filed by the Commissioner shall be referred to as "R.".

**3.** Plaintiff completed her application for SSI benefits and a disability report on January 31, 1996. She stated in the application that her disability began on January 16, 1996, and in the disability report that the condition first bothered her on February 20, 1994, but did not prevent her from working until January 31, 1996. (*See* R. 82, 87.)

tional expert considered three hypotheticals all of which were based upon a person exhibiting

> a slight degree of impairment in terms of activities of daily living; a moderate restriction in terms of difficulties in maintaining social functioning; ... moderate or often deficiencies of concentration, persistence and pace[; m]ore specifically, ... a moderate degree of limitation in terms of the ability to maintain attention and concentration for extended periods; moderate degree of limitation in terms of the ability to work in coordination or proximity with others without being distracted by them[;] ... a moderate degree of limitation in terms of the ability to complete a normal work day and work week without interruptions from psychologically-based symptoms, and to perform at a consistent pace and without any unreasonable number and length of rest periods; a moderate degree of restriction in the ability to travel in unfamiliar places or use public transportation; a moderate degree of limitation in the ability to set realistic goals or make plans independently of others.

(R. 49–50.) In response to the hypothetical most favorable to plaintiff, the vocational expert testified that, even if plaintiff's testimony were found fully credible, her ability to engage in substantial gainful activity was not severely limited. (*See* R. 52.) Plaintiff could work as a bench assembler or hand packer as those jobs required only minimal contact with others. (*See* R. 53–54.) She also might be able to work as a cleaning person. (*See* R. 54.)

The ALJ had before him medical evidence for the period from June 1984 through March 1996. The evidence relevant to plaintiff's psychological impairments, however, primarily covers the period from February 1994 through March 1996. A summary of the relevant medical evidence follows.

In June 1984, plaintiff was admitted to St. Francis Hospital in Hartford, Connecticut, after an attempted drug overdose. She was diagnosed as suffering from an adjustment disorder with depressed mood. (*See* R. 166–69.) The next reference to plaintiff's mental impairment is in a February 18, 1994 Emergency Department Report from the Bristol Hospital in Bristol, Connecticut. Plaintiff was reported as suffering from depression with possible previous panic attacks and was prescribed medication. (*See* R. 227–33.) On two occasions in March 1994, plaintiff reported to the Bristol Hospital Emergency Department. On March 4, 1994, she complained that she was depressed and unable to sleep. The impression was anxiety disorder and possible depression. (*See* R. 234–36.) On March 7, 1994, plaintiff went to the Emergency Department and received medication for depression. (*See* R. 262.) In September 1995, she was referred to Dr. Goldberg at the Counseling Center. (*See* R. 266.)

In February 1994, plaintiff was referred to the Wheeler Clinic in Plainville, Connecticut, for a psychiatric and medical evaluation. (*See* R. 149–61.) The consultative psychiatrist diagnosed panic disorder without agoraphobia and post-traumatic stress disorder with depressive symptoms. (*See* R. 150.) Plaintiff reported that she was involved in abusive relationships and had an abusive childhood. She had attempted suicide when she was eighteen and had a drug problem lasting two years when she was nineteen. She reported no current health problems, handicaps or impairments. (*See* R. 155–56.)

In March 1994, plaintiff underwent a psychiatric evaluation by Dr. Richard S. Goldberg, M.D., her treating psychiatrist. (*See* R. 162.) The treating psychiatrist diagnosed major depression in partial remission and panic disorder in partial remission. (*See Id.*) He recommended that she undergo therapy to deal with ambivalent feelings about her boyfriend and prescribed medication for her symptoms of depression and panic. (*See Id.*)

In March 1996, the treating psychiatrist completed a psychiatric impairment questionnaire. (*See* R. 163–65.) He indicated that plaintiff described her impairment as causing her to have difficulty structuring her time when she was not caring for her children, to be very isolated in her relationships with her two sisters and to be unable to handle stress and conflict. She told the psychiatrist that

she experiences panic attacks when she is pressured to complete tasks. (*See* R. 164.)

In addition to the medical evidence, the ALJ had reports and questionnaires completed by plaintiff and her sister. In the disability report completed by plaintiff at the time of her initial application, she stated that she has seen her treating psychiatrist every three months starting in 1994, and attended sessions at the Counseling Center every week. (*See* R. 88–89.) She described her daily activities as cooking twice per day and cleaning once per week. She reported no hobbies and said that she visited her sister or friend. She did not drive and was afraid to take the bus alone. (*See* R. 90.)

In an undated activities questionnaire, plaintiff stated that her sister did everything except dress plaintiff's children. Although plaintiff could make her own meals, she sometimes forgot things on the stove and burned them. Plaintiff did laundry and her sister dusted, washed dishes, did yard work and shopped for groceries. (*See* R. 95–96.) Plaintiff's sister kept the house clean because plaintiff was too tired to get started. Plaintiff was not involved in any organizations because too many people made her nervous. She rarely visited friends. When friends visited her, she would become nervous if they stayed too long. (*See* R. 96–97.)

On January 31, 1996, plaintiff completed a personal data questionnaire. (*See* R. 103–05.) Plaintiff reported that she prepared meals, cared for her personal needs and washed dishes. Plaintiff's sister did the other housework. (*See* R. 103.) Although she got very tired, plaintiff went grocery shopping twice per week by herself. She spent her time watching television between four and five hours per day. (*See* R. 104.) Plaintiff stated that she found it hard to concentrate, especially when she was around too many people. She rarely went out to visit, but friends visited her about once per week. (*See* R. 105.)

Also in January 1996, plaintiff's sister completed a personal data questionnaire. (*See* R. 99–102.) She stated that plaintiff cooked for the whole family, did the grocery shopping and cared for her personal needs. (*See* 99–100.) Plaintiff did no other chores.

Plaintiff spent her time listening to music, watching television and sleeping. She was sometimes depressed and sometimes forgot things. (*See* R. 101.)

On February 9,1996, plaintiff completed an activities questionnaire. (*See* R. 106–09.) She stated that she spent an average day dressing her children for school and making dinner. Her sister lived with her and did the chores. Plaintiff did the grocery shopping. Although she stated that she made all the meals, plaintiff also reported that she did not cook for others. Plaintiff stated that she was too tired to take her children places. (*See* 106.) Plaintiff did the laundry. She did nothing for fun because she was frightened to be around people. (*See* R. 107.) Plaintiff stated that she visited her sister and friend but that other people made her feel uncomfortable and unsafe. The visits lasted about two hours. (*See* R. 108.)

Residual functional capacity assessments were performed and psychiatric review technique forms completed in April and June 1996. (*See* R. 110–27, 134–46.) Plaintiff was evaluated for affective disorder and anxiety related disorder. In April 1996, plaintiff's impairment was rated as causing a moderate restriction of activities of daily living, moderate difficulty maintaining social functioning, moderate deficiencies in concentration, persistence or pace and no episodes of deterioration or decompensation in work or work-like settings. (*See* R. 117.) The consultative psychiatrist noted the absence of symptoms resulting in a complete inability to function independently outside of the home. (*See* R. 118.) The April 1996 residual functional capacity assessment indicated that plaintiff's understanding and memory were not significantly limited. Her abilities relating to sustained concentration and persistence were not significantly limited except that plaintiff's abilities to maintain attention and concentration for an extended period, to work in coordination with or proximity to others without being distracted by them and to complete a normal work week without interruptions caused by psychologically-based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods were moderately limited. (*See* R.

121–2.) Plaintiff's social interaction was not significantly limited except that her abilities to interact appropriately with the general public and to get along with coworkers without distracting them or exhibiting extreme behavior were moderately limited. Finally, her abilities to adapt to changes in the workplace was not significantly limited except that her abilities to travel in unfamiliar places and use public transportation and to set realistic goals and make plans independently of others were moderately limited. (*See* R. 122.)

The June 1996 psychiatric review technique ratings and residual functional capacity assessment were essentially the same as in April. (*See* R. 134–35, 145.) The consultative psychologist noted that plaintiff's low mood, worry and episodes of panic would occasionally impair her ability to concentrate. Her concerns about safety could occasionally cause distraction in group work settings. Also her persistence and pace could occasionally be compromised by her worry and low energy level. (*See* R. 136.)

On February 13, 1997, the ALJ denied plaintiff's application for SSI benefits. (*See* R. 9–22.) On March 15, 1997, plaintiff filed a request for review by the Appeals Council. (*See* R. 6–8.) On August 26, 1997, the Appeals Council denied the request for review. (*See* R. 4–5.) Plaintiff then timely filed this appeal within the sixty day period following receipt of the decision of the Appeals Council.

## STANDARD OF REVIEW

The scope of review of a social security disability determination involves two levels of inquiry. The court must first decide whether the Commissioner applied the correct legal principles in making the determination. Next, the court must decide whether the determination is supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of

fact. *See Rodriguez v. Califano*, 431 F.Supp. 421, 423 (S.D.N.Y.1977). The court may not decide facts, reweigh evidence or substitute its judgment for that of the Commissioner. *See Dotson v. Shalala*, 1 F.3d 571, 577 (7th Cir.1993); *Reyes v. Harris*, 486 F.Supp. 1063, 1067 (S.D.N.Y.1980). The court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings. Furthermore, "[w]hen there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d at 986.

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). "Disability" is defined under both programs as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1).

Determining whether a claimant is disabled requires a five-step process. *See* 20 C.F.R. § 416.920. First, the court must determine whether the claimant is currently working. *See* 20 C.F.R. § 416.910(b), 416.972(b). If the claimant is currently employed, the claim is disallowed. *See* 20 C.F.R. § 416.920(b). If the claimant is not working, as a second step, the agency must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is denied. *See* 20 C.F.R. § 416.920(c). Once the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in appendix 1 of the regulations [the "Listings"]. *See* 20 C.F.R. § 416.920(d); *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. *See* 20

C.F.R. § 416.920(d); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work. *See* 20 C.F.R. § 416 .920(e). If the claimant cannot perform his former work, he must show, as a fifth and final step, that he is prevented from doing any other work. A claimant is entitled to receive disability benefits only if he cannot perform any alternate gainful employment. *See* 20 C.F.R. § 416.920(f).

The initial burden of establishing disability is on the claimant. *See* 42 U.S.C. § 423(d)(5). Once the claimant demonstrates that he is incapable of performing his past work, however, the burden shifts to the Commissioner to show that the claimant has the residual functional capacity to perform other substantial gainful activity in the national economy. *See Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). This may require the application of the Medical–Vocational Guidelines ["the grid"] which places claimants with severe exertional impairments who can no longer perform past work into grid categories according to their residual functional capacity, age, education and work experience, and dictates a conclusion of disabled or not disabled. *See* 20 C.F.R. § 404.1520(f). A proper application of the grid makes vocational testing unnecessary.

The grid covers only exertional impairments; nonexertional impairments, including psychiatric disorders are not covered. *See* 20 C.F.R. § 200.00(e)(2). If the grid cannot be used, *i.e.,* when nonexertional impairments are present or when exertional impairments do not fit squarely within grid categories, the testimony of a vocational expert is generally required to support a finding of residual functional capacity for substantial gainful activity. *See Bapp v. Bowen,* 802 F.2d 601, 605 (2d Cir.1986).

## DISCUSSION

Following the five step evaluation process, the ALJ determined that plaintiff has not engaged in substantial gainful activity since January 31, 1996. (*See* R. 13, 16.) Although plaintiff presented medical evidence that she suffers from "affective disorders, anxiety-related disorders and a panic disorder," the ALJ found that her impairment does not meet or equal any listed impairment. (*See Id.*) The ALJ found plaintiff's statements concerning the restrictions caused by her impairment mostly credible. (*See* R. 16.) The ALJ determined that plaintiff had "the residual functional capacity to perform the physical exertion and nonexertional requirements of light work." (*See Id.*) The ALJ determined that plaintiff could be expected to make a vocational adjustment to work existing in significant numbers in the national economy. (*See* R. 17.) Thus, the ALJ found that plaintiff has not been under a disability at any time through the date of decision and denied SSI benefits. (*See* R. 17–18.)

The ALJ also completed a psychiatric review technique form. (*See* R. 19–22.) He noted that plaintiff presented evidence of affective disorders, Listing 12.04, and anxiety disorders, Listing 12.06. (*See* R. 19–21.) He determined, however, that plaintiff demonstrated only slight restrictions of activities of daily living and moderate difficulties maintaining social functioning. She often exhibited deficiencies of concentration, persistence or pace resulting in failure to complete tasks timely and once or twice demonstrated episodes of deterioration or decompensation in work or work-like settings which caused her to withdraw from the situation or experience exacerbation of signs or symptoms. (*See* R. 21–22.)

Plaintiff advances two arguments in support of her motion for summary judgment and a remand for further proceedings: (1) plaintiff's impairments meets the listing requirements for affective disorders and anxiety disorders, and (2) a remand is necessary because the ALJ failed to identify any evidence in support of his conclusion that plaintiff retained the residual functional capacity to perform work at the light level of exertion. In response, defendant argues that plaintiff's symptoms do not meet the requirements of the listed impairments and that plaintiff's argument is merely a disagreement with the result reached by the ALJ. In addition, defendant contends that plaintiff has waived any other arguments that may be made in

support of her claim. Finally, defendant contends that the ALJ's decision is supported by substantial evidence and should be affirmed. The court considers these arguments below.

### I. *Request for Remand*

Plaintiff asks the court to remand this case to enable the Commissioner to properly evaluate her impairment.

A district court may remand a final decision of the Secretary pursuant to two sentences in § 405(g). Plaintiff does not specify under which sentence she is making his motion for remand.

Under sentence four of § 405(g) the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause of action for a rehearing." The district court may remand a case pursuant to sentence four of § 405(g) for the taking of additional evidence, as long as the court enters a judgment affirming, modifying or reversing the Commissioner's decision. *See Sullivan v. Hudson,* 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

Sentence six of § 405(g) states:

[t]he court may, on motion of the [Commissioner] made for good cause shown before he files his answer, remand the case to the [Commissioner] for further action by the [Commissioner], and it may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

Under sentence six, the case is remanded without an order affirming or reversing the decision of the Commissioner. In addition, the party seeking a remand under sentence six to present additional evidence must demonstrate that the evidence is new and material, and that there is good cause why the evidence was not available earlier. *Melkonyan v. Sullivan,* 501 U.S. 89, 100, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

In her motion for remand, plaintiff fails to indicate whether she requests a remand pursuant to sentence four or sentence six of § 405(g). The fact that plaintiff contemporaneously filed a motion for summary judgment suggests that she seeks a remand pursuant to sentence four. In addition, plaintiff presents no new evidence for consideration. Thus, the court concludes that plaintiff seeks a remand in conjunction with an order reversing the Commissioner's decision pursuant to sentence four.

### II. *Listed Impairments*

Plaintiff contends that her impairment satisfies the requirements of listing 12.04, Affective Disorders, and 12.06, Anxiety Disorders.

The ALJ determines whether a mental impairment exists by reviewing the record to determine whether there is any evidence of clinical signs, symptoms, findings, functional limitations or treatments indicating a mental impairment. *See* 20 C.F.R. § 416.920a(b). With regard to mental impairments, "[c]linical signs are medically demonstrable phenomena which reflect specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality. These signs are typically assessed by a psychiatrist or psychologist and/or documented by psychological tests. Symptoms are complaints presented by the individual." 20 C.F.R. Pt. 404, Subpt. P, § 12.00 B.

Plaintiff must present reports about the impairment from acceptable medical sources. *See* 20 C.F.R. § 404.1513(a). Acceptable medical sources include physicians, osteopaths, and psychologists. *Id.* Information from other sources, such as non-medical sources and other practitioners may also be considered. *See* 20 C.F.R. § 404.1513(e). Medical reports submitted to the Commissioner to establish the existence of a mental impairment should include the claimant's medical history, clinical and laboratory findings, diagnosis, prescribed treatment along with the claimant's response to that treatment, statement indicating what the claimant can still do despite the impairment, and medical source's opinion about the claimant's ability to understand, remember and carry out instructions and to respond appropriately to supervision, coworkers and work pressures. *See* 20 C.F.R. § 404.1513(c).

## A. *Listing 12.04—Affective Disorders*

An affective disorder is defined in Listing 12.04 as "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." To meet the listing requirements for an affective disorder, plaintiff must satisfy the requirements set forth in parts A and B of the listing.

■ Plaintiff contends that she satisfies the requirements for depressive syndrome under part A of the listing. To demonstrate the existence of a depressive syndrome, plaintiff must provide "[m]edically documented" evidence of "persistence, either continuous or intermittent" at least four of the following symptoms: a pervasive loss of interest in almost all activities, appetite disturbance with associated weight change, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, and hallucinations, delusions or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, § 12.04 A.

In this case, plaintiff claims that the record evidence supports a finding that she exhibited psychomotor retardation, decreased energy, sense of worthlessness, difficulty concentrating and lack of interest in doing any activities. This claim appears to be based upon plaintiff's testimony and the testimony of her friend rather than on the medical evidence. The record contains two reports from plaintiff's treating psychiatrist. On May 6, 1994, the treating psychiatrist stated that plaintiff had been diagnosed as suffering from major depression in partial remission and panic disorder in partial remission. He prescribed medication for her symptoms of depression and panic and recommended therapy to deal with her feelings toward her boyfriend. (*See* R. 162.) In March 1996, the treating psychiatrist performed a second mental status examination and reported that plaintiff experienced difficulty structuring her time when she was not caring for her children and had difficulty handling stress and conflict. Most of the treating psychiatrist's observations seem to be reports of symptoms described by plaintiff. (*See* R. 164.) The treating psychiatrist noted that, since April 1994, plaintiff had been treated at The Counseling Center for generalized anxiety disorder, schizoaffective disorder, major depression and borderline personality disorder. (*See Id.*) The treating psychiatrist's reports do not satisfy the requirements of 20 C.F.R. § 404.1513(c) in that he presents no psychological test results, clinical and laboratory findings with his report. In addition he does not indicate plaintiff's response to his treatment or his opinion on what plaintiff can still do despite her impairment or her ability to understand, remember and carry out instructions and to respond appropriately to supervision, coworkers and work pressures. The court notes that, on October 10, 1996, the ALJ indicated that the most recent medical evidence was from February 1996, and ordered plaintiff to provide updated reports from her treating sources including all specific physical and laboratory findings. (*See* R. 31.) No medical evidence appears to have been submitted in response to the order.

■ Even if the court were to determine that the symptoms exhibited by plaintiff, without corroborating medical evidence, did satisfy the criteria in part A of Listing 12.04, plaintiff does not satisfy the listing requirements because she does not satisfy all of the criteria in part B of Listing 12.04.

"[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir.1986). The plaintiff bears the burden of proof that her mental impairment prevents her from doing her past work. *Sitar v. Schweiker,* 671 F.2d 19, 20 (1st Cir.1982). If the ALJ determines that a mental impairment exists, the ALJ next examines the four areas of activity considered to be essential to the ability to work to determine what degree of functional loss is attributable to the mental impairment. 20 C.F.R. § 416.920a(b)(3). These four areas of activity are: activities of daily living; social functioning; concentration, persistence or pace; and deterioration or decompensation in work or work-like settings. *Id.*

For plaintiff's impairment to be considered disabling, she must demonstrate that the impairment resulted in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; and repeated episodes of deterioration or decompensation in work or work-like settings which cause her to withdraw from the situation or to experience exacerbation of signs and symptoms. *See* 20 C.F.R. Pt. 404, Subpt. P. § 12.04 B.

An examination of the record fails to demonstrate substantial evidence supporting the existence of at least two restrictions. One restriction, repeated episodes of deterioration or decompensation in work or work-like settings, is the repeated failure to adapt to stressful circumstances. The record reveals that plaintiff has never worked. (*See* R. 38, 91). Accordingly, plaintiff cannot demonstrate that her impairment has caused her to experience periods of deterioration or decompensation in work settings. The ALJ found that plaintiff had exhibited episodes of deterioration or decompensation in work-like settings only once or twice. (*See* R. 22.) The consultative psychiatrist and psychologist determined that plaintiff never experienced these episodes. (*See* 117, 145.)

A second restriction is deficiencies of concentration, persistence and pace resulting in the frequent failure to complete tasks in a timely manner.

Concentration, persistence and pace refer to the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings. In activities of daily living, concentration may be reflected in terms of ability to complete tasks in everyday household routines. Deficiencies in concentration, persistence and pace are best observed in work and work-like settings. Major impairment in this area can often be assessed through direct psychiatric examination and/or psychological testing, although mental status examination or psychological test data alone should not be used to accurately describe concentration and sustained ability to adequately perform work-like tasks. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 C(3).

Here, the ALJ noted that "[a]lthough [plaintiff] often has deficiencies of concentration, which limit[ ] her ability to focus on and complete tasks, she could perform routine and repetitive work related tasks." (*See* R. 14.) The consultative psychiatrist and psychologist reported moderate and often deficiencies of concentration, persistence or pace. (*See* R. 117, 145.) No consultative psychiatrist or psychologist found that plaintiff experienced marked deficiencies. Plaintiff's treating psychiatrist provides no test results supporting plaintiff's claim that her impairment prevents her from being able to perform routine tasks and does not state that she cannot perform such tasks.

A third requirement is marked restrictions of activities of daily living.

Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene, using telephones and directories, using a post office, etc. In the context of the individual's overall situation, the quality of these activities is judged by their independence, appropriateness and effectiveness It is necessary to define the extent to which the individual is capable of initiating and participating in activities independent of supervision or direction.

"Marked" is not the number of activities which are restricted but the overall degree of restriction or combination of restrictions which must be judged. For example, a person who is able to cook and clean might still have marked restrictions of daily activities if the person were too fearful to leave the immediate environment of home and neighborhood, hampering the person's ability to obtain treatment or to travel away from the immediate living environment.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 C(1). The assessment of plaintiff's functional limitations prepared at the time of her application for SSI benefits found moderate re-

striction of activities of daily living. (*See* 117.) The assessments completed upon reconsideration and by the ALJ found only slight restriction. (*See* R. 145, 21.)

The ALJ found that plaintiff cares for her personal needs, dresses her children for school, prepares meals and visits with a friend. Plaintiff also indicated in documents contained in the record that she manages her finances and shops for groceries. There is no indication that plaintiff is unable to obtain treatment. She visits her treating psychiatrist on a regular basis and attends weekly therapy sessions. She also reports to the emergency room at the local hospital for medical complaints. The ALJ noted that plaintiff "has some problems sleeping, and does exhibit signs and symptoms of depression and anxiety." He found, however, that she "can perform most activities of daily living and social functioning, despite her impairments." He concluded that her activities of daily living were not significantly disturbed by her impairments. (*See* R. 14.) Plaintiff points to her own testimony and that of her friend in support of her claim that she cannot perform activities of daily living. The ALJ, however, determined that plaintiff's assertion of the severity of her symptoms and the degree of her incapacity "are not supported by the record and are not deemed credible to the degree alleged." (*See* R. 13.)

The evaluation of the evidence and resolution of any inconsistencies is exclusively the province of the Commissioner. *Richardson v. Perales,* 402 U.S. at 400, 91 S.Ct. 1420. Because the ALJ's determination is supported by substantial evidence, the court will not disturb the ALJ's finding that plaintiff does not display a marked restriction of activities of daily living.

The record does not contain sufficient evidence to support a finding that the plaintiff meets at least two of the requirements in part B of Listing 12.04. Thus, the court need not consider the fourth requirement. Because plaintiff has not presented evidence that she satisfies the requirements of both parts A and B of Listing 12.04, her claim that her impairment meets this list must fail. *See Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (holding that plaintiff bears burden of providing evidence demonstrating that she satisfies all listing requirements). Plaintiff has not demonstrated that her affective disorder interfered with her ability to perform substantial gainful activity. *See Gross v. Heckler,* 785 F.2d at 1166 (showing of related functional loss required before mental impairment considered disabling).

### B. Listing 12.06—Anxiety Related Disorders

Plaintiff also contends that she meets the listing requirements for anxiety related disorders. To satisfy the listing requirements, plaintiff must meet the requirements set forth in part A of the listing and the requirements in part B or part C. Part A requires plaintiff to present:

Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

   a. Motor tension; or

   b. Autonomic hyperactivity; or

   c. Apprehensive expectation; or

   d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

20 C.F.R. Pt. 404, Subpt. P, § 12.06 A. The ALJ did not specifically address the sufficiency of the medical evidence supporting these symptoms. Even if the court assumes, for the purposes of this ruling, that plaintiff can meet the requirements of part A of the listing for anxiety related disorders, she does not satisfy the remaining requirements.

368

Part B of listing 12.06 is identical to part B of listing 12.04. The court has concluded above that the ALJ's finding that plaintiff does not meet the requirements of part B is supported by substantial evidence.

Part C of listing 12.00 provides that the symptoms result "in complete inability to function independently outside the area of one's home." The consultative psychiatrist specifically found the absence of symptoms resulting in a complete inability to function independently outside the home. (*See* R. 118.) In the absence of contrary evidence from plaintiff's treating psychiatrist, the ALJ could rely on the opinion of the consultative psychiatrist.

Because plaintiff failed to present evidence establishing that she satisfies the requirements in either part B or part C, she has not demonstrated that she meets the requirements of listing 12.06.

III. *Substantial Evidence in Support of ALJ's Decision*

 Plaintiff contends that the ALJ failed to identify any evidence in support of his determination that she can engage in substantial gainful activity at the light level of exertion. Defendant argues that the Commissioner's decision is supported by substantial evidence and should be affirmed.

Because the plaintiff exhibited nonexertional impairments, the ALJ heard testimony from a vocational expert. The hypothetical questions presented to the vocational expert included all of plaintiff's impairments and varied in the credibility accorded plaintiff's testimony. Even when the vocational expert credited all of plaintiff's testimony, however, he determined that she was able to work as a bench assembler or hand packer and possibly as a cleaning person. (*See* R. 50–53.)

In support of her argument, plaintiff directs the court to a case holding that an ALJ may not disregard the uncontradicted report of a medical advisor that a claimant suffers from a severe impairment. *See Figueroa–Rodriguez v. Secretary of HHS*, 845 F.2d 370, 374 (1st Cir.1988) (per curiam). That case does not support plaintiff's argument. Here, the ALJ found that plaintiff suffered from a severe impairment. In addition, the ALJ's determinations are consistent with the record medical evidence. The court concludes that the ALJ's decision is supported by substantial evidence.

CONCLUSION

For the reasons stated above, defendant's Motion for Order Affirming the Decision of the Commissioner [Doc. # 15] is GRANTED. Plaintiff's Motions for Summary Judgment [Docs. ##9, 10] are DENIED.

The parties are free to seek the district judge's review of this recommendation. *See* 28 U.S.C. § 636(b) (written objection to ruling must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989) (failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).